STATE OF CONNECTICUT *v.* JOHN LUTTERS
(SC 16982)

Sullivan, C. J., and Borden, Norcott, Katz,
Palmer, Vertefeuille and Zarella, Js.[1]

---

[1] This case was first argued on October 29, 2003, before a panel of this court consisting of Justices Borden, Norcott, Katz, Vertefeuille and Zarella. Thereafter, the court, pursuant to Practice Book § 70-7 (b), sua sponte, ordered that the case be considered en banc. Chief Justice Sullivan and Justice Palmer were added to the panel, and they have read the record and briefs and have listened to the tape recording of the original oral argument.

*(One justice concurring separately; two
justices dissenting in one opinion)*

Argued October 29, 2003—officially released July 20, 2004

*Michele C. Lukban,* assistant state's attorney, with whom, on the brief, was *Michael Dearington,* state's attorney, and *John P. Doyle, Jr.,* assistant state's attorney, for the appellant (state).

*Robert M. Berke,* for the appellee (defendant).

*Opinion*

PALMER, J. The sole issue presented by this appeal is whether a taxicab falls within the "place of business" exception to the offense of carrying a pistol without a permit contained in General Statutes § 29-35 (a).[2] The

[2] General Statutes § 29-35 (a) provides: "No person shall carry any pistol or revolver upon one's person, except when such person is within the dwelling house or place of business of such person, without a permit to carry the same issued as provided in section 29-28. The provisions of this subsection shall not apply to the carrying of any pistol or revolver by any parole officer or peace officer of this state, or parole officer or peace officer of any other state while engaged in the pursuit of official duties, or federal marshal or federal law enforcement agent, or to any member of the armed forces of the United States, as defined by section 27-103, or of this state, as defined by section 27-2, when on duty or going to or from duty, or to any member of any military organization when on parade or when going to or from any place of assembly, or to the transportation of pistols or revolvers as merchandise, or to any person transporting any pistol or revolver while contained in the package in which it was originally wrapped at the time of sale and while transporting the same from the place of sale to the purchaser's residence or place of business, or to any person removing such person's household goods or effects from one place to another, or to any person while transporting any such pistol or revolver from such person's place of residence or business to a place or individual where or by whom such pistol or revolver is to be repaired or while returning to such person's place of residence or business after the same has been repaired, or to any person transporting a pistol or revolver in or through the state for the purpose of taking part in competitions, taking part in formal pistol or revolver training, repairing such pistol or revolver or attending any meeting or exhibition of an organized collectors' group if such person is a bona fide resident of the United States and is permitted to possess and carry a pistol or revolver in the state or subdivision of the United States in which such person resides, or to any person transporting a pistol or revolver to and from a testing range at the request of the issuing authority, or to any person transporting an antique pistol or revolver, as defined in section 29-33. For the purposes

defendant, John Lutters, was charged in a one count information with carrying a pistol without a permit in violation of § 29-35 (a). Prior to trial, the defendant filed a motion to dismiss the information, claiming that, although he had possessed a handgun without a permit as alleged, he had done so while operating a taxicab in which he had a proprietary interest, and, therefore, his possession of the handgun without a permit was not prohibited by § 29-35 (a) because his taxicab constituted a place of business within the meaning of that exception to § 29-35 (a). The trial court granted the defendant's motion to dismiss and, with the permission of the trial court,[3] the state appealed,[4] claiming that the place of business exception of § 29-35 (a) does not apply to taxicabs. We agree with the state and, consequently, reverse the judgment of the trial court.

of this subsection, 'formal pistol or revolver training' means pistol or revolver training at a locally approved or permitted firing range or training facility, and 'transporting a pistol or revolver' means transporting a pistol or revolver that is unloaded and, if such pistol or revolver is being transported in a motor vehicle, is not readily accessible or directly accessible from the passenger compartment of the vehicle or, if such pistol or revolver is being transported in a motor vehicle that does not have a compartment separate from the passenger compartment, such pistol or revolver shall be contained in a locked container other than the glove compartment or console. Nothing in this section shall be construed to prohibit the carrying of a pistol or revolver during formal pistol or revolver training or repair."

Although § 29-35 (a) was the subject of technical amendments after the date of the defendant's alleged violation of the statute; see Public Acts 2003, No. 03-19, § 68; Public Acts 2001, No. 01-130, § 9; those amendments have no bearing on the merits of this appeal. For ease of reference, we refer to the current revision of § 29-35 (a) throughout this opinion.

[3] General Statutes § 54-96 provides: "Appeals from the rulings and decisions of the Superior Court, upon all questions of law arising on the trial of criminal cases, may be taken by the state, with the permission of the presiding judge, to the Supreme Court or to the Appellate Court, in the same manner and to the same effect as if made by the accused."

[4] The state appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

The following relevant facts are undisputed.[5] At all times pertinent to this appeal, the defendant was a taxicab driver in the city of New Haven. When operating his taxicab, the defendant carried a handgun in a pack on his waist. The defendant did not obtain a permit for the handgun in accordance with General Statutes § 29-28 (b).[6] The defendant operated his taxicab under the auspices of Metro Taxi Company, Inc. (Metro Taxi).[7]

On June 15, 2001, at about 11 p.m., the defendant picked up a customer who, while attempting to rob him, stabbed the defendant in the neck. The defendant removed his handgun from the pack on his waist and shot and killed the assailant. The defendant then drove away from the scene and disconnected his two-way radio, which serves to track the location of his taxicab. Meanwhile, the New Haven police determined that a taxicab from Metro Taxi had been involved in the shoot-

---

[5] The parties entered into a joint stipulation of facts for purposes of the defendant's motion to dismiss.

[6] General Statutes § 29-28 (b) provides in relevant part: "Upon the application of any person having a bona fide residence or place of business within the jurisdiction of any such authority, such chief of police, warden or selectman may issue a temporary state permit to such person to carry a pistol or revolver within the state, provided such authority shall find that such applicant intends to make no use of any pistol or revolver which such applicant may be permitted to carry under such permit other than a lawful use and that such person is a suitable person to receive such permit. . . . Not later than sixty days after receiving a temporary state permit, an applicant shall appear at a location designated by the commissioner to receive the state permit. Said commissioner may then issue, to any holder of any temporary state permit, a state permit to carry a pistol or revolver within the state. Upon issuance of the state permit, the commissioner shall forward a record of such permit to the local authority issuing the temporary state permit. . . ."

[7] The defendant leased the taxicab from a leasing company with an option to purchase it. In addition, the defendant paid taxes and insurance premiums on the taxicab, was responsible for its repair and maintenance, and paid the registration fee for the taxicab. In light of these and other pertinent stipulated facts, the trial court found, and the parties do not dispute, that the defendant operated the taxicab as an independent contractor and not as an employee of Metro Taxi.

ing and contacted the company. Initially, Metro Taxi was unable to locate the defendant. Eventually, however, the defendant contacted Metro Taxi and, when he was informed that the police were looking for him, he gave his location and waited for the police to arrive. When the police arrived at approximately 4:30 a.m. on June 16, 2001, the defendant advised them that his handgun was in the trunk of his taxicab.

The defendant was charged with carrying a pistol without a permit in violation of § 29-35 (a). He thereafter moved to dismiss the charge, claiming that he was exempt from the permit requirement of § 29-28 (b) because his taxicab, in which he had a proprietary interest,[8] was a place of business within the meaning of that exception to § 29-35 (a). In opposing the defendant's motion to dismiss, the state claimed that a taxicab is not a place of business within the meaning of § 29-35 (a). In support of its contention, the state placed particular reliance on General Statutes § 29-38,[9] which,

[8] In *State* v. *Vickers*, 260 Conn. 219, 226, 796 A.2d 502 (2002), we held, inter alia, that the place of business exception of § 29-35 (a) applies only to persons who have a "proprietary or controlling interest" in their business premises. The trial court found that, in light of the relevant facts to which the parties had stipulated; see footnote 7 of this opinion; the defendant had a proprietary interest in his taxicab sufficient to meet that requirement of the place of business exception of § 29-35 (a). The state has not challenged that finding, and, consequently, it is not at issue in this appeal.

[9] General Statutes § 29-38 provides: "(a) Any person who knowingly has, in any vehicle owned, operated or occupied by such person, any weapon, any pistol or revolver for which a proper permit has not been issued as provided in section 29-28 or any machine gun which has not been registered as required by section 53-202, shall be fined not more than one thousand dollars or imprisoned not more than five years or both, and the presence of any such weapon, pistol or revolver, or machine gun in any vehicle shall be prima facie evidence of a violation of this section by the owner, operator and each occupant thereof. The word 'weapon', as used in this section, means any BB. gun, any blackjack, any metal or brass knuckles, any police baton or nightstick, any dirk knife or switch knife, any knife having an automatic spring release device by which a blade is released from the handle, having a blade of over one and one-half inches in length, any stiletto, any knife the edged portion of the blade of which is four inches or over in length, any martial arts weapon or electronic defense weapon, as defined in section 53a-3, or any other dangerous or deadly weapon or instrument.

with exceptions not applicable to taxicabs, expressly prohibits, inter alia, the carrying of a pistol without a permit in any motor vehicle. Although the trial court acknowledged that the primary purpose of §§ 29-35 (a) and 29-38 is to restrict the possession of unlicensed handguns in the public sphere, it nevertheless granted the defendant's motion to dismiss, concluding that, in light of the place of business exception of § 29-35 (a), the legislature necessarily had determined that the interest of a business proprietor in protecting his or her business premises outweighs the public interest in prohibiting the proprietor from possessing a handgun on his or her business premises without first obtaining a permit. The trial court further concluded that the

"(b) The provisions of this section shall not apply to: (1) Any officer charged with the preservation of the public peace while engaged in the pursuit of such officer's official duties; (2) any security guard having a baton or nightstick in a vehicle while engaged in the pursuit of such guard's official duties; (3) any person enrolled in and currently attending a martial arts school, with official verification of such enrollment and attendance, or any certified martial arts instructor, having any such martial arts weapon in a vehicle while traveling to or from such school or to or from an authorized event or competition; (4) any person having a BB. gun in a vehicle provided such weapon is unloaded and stored in the trunk of such vehicle or in a locked container other than the glove compartment or console; and (5) any person having a knife, the edged portion of the blade of which is four inches or over in length, in a vehicle if such person is (A) any member of the armed forces of the United States, as defined in section 27-103, or any reserve component thereof, or of the armed forces of this state, as defined in section 27-2, when on duty or going to or from duty, (B) any member of any military organization when on parade or when going to or from any place of assembly, (C) any person while transporting such knife as merchandise or for display at an authorized gun or knife show, (D) any person while lawfully removing such person's household goods or effects from one place to another, or from one residence to another, (E) any person while actually and peaceably engaged in carrying any such knife from such person's place of abode or business to a place or person where or by whom such knife is to be repaired, or while actually and peaceably returning to such person's place of abode or business with such knife after the same has been repaired, (F) any person holding a valid hunting, fishing or trapping license issued pursuant to chapter 490 or any salt water fisherman while having such knife in a vehicle for lawful hunting, fishing or trapping activities, or (G) any person participating in an authorized historic reenactment."

defendant's taxicab fell within the place of business exception of § 29-35 (a) and, therefore, that the defendant's possession of a handgun without a permit while operating his taxicab did not constitute a violation of § 29-35 (a). Consequently, the trial court granted the defendant's motion to dismiss.[10]

With the permission of the trial court, the state filed this appeal. On appeal, the state maintains that the place of business exception of § 29-35 (a) is inapplicable to taxicabs.

The issue raised by the state's claim is one of statutory interpretation, and, therefore, our review is plenary. E.g., *Segal* v. *Segal*, 264 Conn. 498, 506, 823 A.2d 1208 (2003). "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." Public Acts 2003, No. 03-154, § 1. When a statute is not plain and unambiguous, however, as in the present case, "we [also] look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter [for interpre-

---

[10] The trial court initially denied the defendant's motion to dismiss without prejudice because the stipulation of facts had not indicated whether the state could establish that the defendant had possessed the handgun outside of his taxicab. The state thereafter conceded, however, that it could not prove that the defendant had possessed the handgun at any time when he was outside the taxicab. In light of that concession, the state also acknowledged that it could not proceed against the defendant under the information in view of the trial court's conclusion that the place of business exception of § 29-35 (a) applied to the defendant's taxicab. The trial court thereupon granted the defendant's motion to dismiss the information.

tive guidance]."[11] (Internal quotation marks omitted.) *Nizzardo* v. *State Traffic Commission*, 259 Conn. 131, 141, 788 A.2d 1158 (2002).

Special rules govern our review of penal statutes. "We have long held that [c]riminal statutes are not to be read more broadly than their language plainly requires . . . . Thus, we begin with the proposition that [c]ourts must avoid imposing criminal liability where the legislature has not *expressly* so intended . . . and ambiguities are ordinarily to be resolved in favor of the defendant. . . . In other words, penal statutes are to be construed strictly and not extended by implication to create liability which no language of the act purports to create. . . . [T]his does not mean [however] that every criminal statute must be given the narrowest possible meaning in complete disregard of the purpose of the legislature. . . . No rule of construction . . . requires that a penal statute be strained and distorted in order to exclude conduct clearly intended to be within its scope—nor does any rule require that the act be given the narrowest meaning. It is sufficient if the words are given their fair meaning in accord with the evident intent of [the legislature]. . . . The rule that terms in a statute are to be assigned their ordinary meaning, unless context dictates otherwise . . . also guides our interpretive inquiry." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Scott*, 256 Conn. 517, 531–32, 779 A.2d 702 (2001). With these principles in mind, we turn to the merits of the state's claim that the trial court improperly construed the term "place of business" in § 29-35 (a) to include taxicabs.

The state maintains that the trial court failed to consider that term in its proper statutory context and, in

---

[11] Neither the state nor the defendant contends that the language of § 29-35 (a) is plain and unambiguous.

particular, in relation to the provisions of § 29-38 (a), which expressly prohibit, inter alia, a person from transporting, without a permit, a pistol or revolver in a motor vehicle. The state asserts that the more specific provisions of § 29-38 (a) necessarily inform our understanding of the more general provisions of § 29-35 (a). The state further notes that §§ 29-35 (a) and 29-38 (b) exempt certain occupations from the permit requirement otherwise applicable to the possession of handguns and that, notably, the occupation of taxicab driver is not included among them. The state also maintains that the trial court's interpretation of § 29-35 (a) is inconsistent with the legislative purpose underlying that statutory provision and § 29-38, namely, to prohibit the possession of unregistered handguns in the public arena generally and in motor vehicles specifically. Finally, the state claims that the trial court's statutory interpretation leads to the bizarre result that a taxicab driver is free to carry a pistol without a permit in his taxicab even though, under § 29-38, he is prohibited from carrying certain less dangerous weapons in his taxicab, such as brass knuckles or a BB gun. For the reasons advanced by the state, we agree that a taxicab is not a place of business within the meaning of § 29-35 (a).

As in all cases of statutory analysis, we begin with the pertinent statutory language. General Statutes § 29-35 (a) provides in relevant part: "No person shall carry any pistol or revolver upon one's person, except when such person is within the dwelling house or place of business of such person, without a permit to carry the same issued as provided in section 29-28. . . ." Although the word "place," like virtually all words, has different connotations, we are persuaded that the term "place *of business*" implies a particular or fixed location and not merely a type of chattel. In other words, we generally think of a motor vehicle as mobile personal property that, at any point in time, *occupies* a particular

place but that is not, *itself*, a place. Even in circumstances in which a motor vehicle is integral to one's business, we usually do not refer to that motor vehicle as the *place* where that business is *located*. Thus, as we noted in *State* v. *Vickers*, 260 Conn. 219, 796 A.2d 502 (2002), one's place of business is "the premises in which the business one owns or controls is located . . . ." Id., 225. A motor vehicle generally is not considered the premises in which a business is located.[12]

Consideration of the term "place of business" within the broader context of § 29-35 (a) as a whole bolsters our conclusion that the place of business exception includes fixed places of business only. As we observed in *State* v. *Vickers*, supra, 260 Conn. 219, § 29-35 (a) "delineates the specific jobs that . . . are excluded

---

[12] The California Court of Appeals made this essential point in rejecting a claim identical to the one raised by the defendant in the present case. In *People* v. *Wooten*, 168 Cal. App. 3d 168, 214 Cal. Rptr. 36 (1985), the court stated: "The clear legislative purpose [of the California statute barring the possession of handguns without a permit or license] is to prohibit the carrying around of concealed weapons. [The statutory scheme] provides an exception for possession in one's residence or place of business. The natural meaning of the term 'place of business' is a fixed location, simply because almost all businesses are conducted in some office, store or other building. When a business is mobile, one generally says that the business is not conducted in any particular place . . . ." Id., 173. The court in *Wooten* further explained that the word "place," properly understood in context, is not reasonably susceptible of the broad interpretation that had been urged by the defendant, Robert Lee Wooten, in that case. See id., 175. The court stated: "Anyone reading [the] terms [of the statutory scheme] would see that its exemption for residences and places of business does not extend to the vehicle used by every businessman who must travel in the course of his business. [Wooten's] use of a dictionary definition of 'place' as 'an indefinite region or expanse' does not invoke any vagueness that would be perceived by a person of common intelligence. This use applies to large places—for example, California is a 'place.' Does this mean that anyone who does business in California can carry a concealed weapon anywhere in the state because it is his 'place of business'? Of course not. The phrase, 'place of business' has a narrower meaning than each of its component terms. It is used to describe stores, offices, warehouses, etc. where business is conducted. These are not indefinite expanses and are not mobile pieces of personal property." Id.

from the permit requirement." Id., 225. The specific occupations exempted under § 29-35 (a) include parole and peace officers of this state or another state while engaged in the pursuit of official duties, federal marshals, federal law enforcement agents, and members of the armed forces "when on duty or going to or from duty . . . ." General Statutes § 29-35 (a). Mobility is essential to these occupations, as it is to a taxicab driver. In contrast to the occupation of taxicab driver, however, the occupations exempted under § 29-35 (a) are occupations that involve the protection of the *public* and for which weapons are considered an essential tool of the trade. The legislature carved out a limited exception for those public safety occupations by expressly exempting them from the strictures of § 29-35 (a); if the legislature had intended to expand significantly the number and kind of exempted occupations to include taxicab drivers and other mobile types of occupations, we reasonably may presume that the legislature also would have done so expressly. See, e.g., *State* v. *Vickers*, supra, 225 (absent contrary evidence, statutory itemization indicates that legislature intended list to be exclusive).

Similarly, the provisions of General Statutes § 29-35 (a) prohibiting the possession of a handgun without a permit outside a dwelling house or place of business expressly do not apply to: (1) "the transportation of pistols or revolvers as merchandise"; (2) "any person transporting any pistol or revolver while contained in the package in which it was originally wrapped at the time of sale and while transporting the same from the place of sale to the purchaser's residence or place of business"; (3) "any person while transporting any such pistol or revolver from such person's place of residence or business to a place or individual where or by whom such pistol or revolver is to be repaired or while returning to such person's place of residence or busi-

ness after the same has been repaired"; (4) "any person transporting a pistol or revolver in or through the state for the purpose of taking part in competitions, taking part in formal pistol or revolver training, repairing such pistol or revolver or attending any meeting or exhibition of an organized collectors' group if such person is a bona fide resident of the United States and is permitted to possess and carry a pistol or revolver in the state or subdivision of the United States in which such person resides"; (5) "any person transporting a pistol or revolver to and from a testing range at the request of the issuing authority"; and (6) "any person transporting an antique pistol or revolver, as defined in section 29-33."

These six limited exceptions to § 29-35's general prohibition of the possession of a handgun without a permit outside of a dwelling house or place of business represent the legislature's recognition that, on occasion, it may be necessary to transport an unlicensed handgun from a dwelling house or place of business to another location for a specific and limited purpose, including, for example, the repair of the handgun. The narrowly circumscribed nature of these exceptions, however, is indicative of the overriding purpose of § 29-35 (a), namely, to curtail the possession of unlicensed handguns in the public arena. See *State* v. *Vickers*, supra, 260 Conn. 227–28. Moreover, in keeping with that purpose, the legislature has placed severe restrictions on the manner in which an unlicensed handgun may be transported in accordance with any one of the six aforementioned exceptions. Specifically, General Statutes § 29-35 (a) provides that no unlicensed pistol or revolver may be transported in a motor vehicle under one of those exceptions unless the pistol or revolver is unloaded and "is not readily accessible or directly accessible from the passenger compartment of the vehicle or, if such pistol or revolver is being transported

in a motor vehicle that does not have a compartment separate from the passenger compartment, such pistol or revolver shall be contained in a locked container other than the glove compartment or console." These stringent requirements pertaining to the transport of unregistered handguns in motor vehicles reinforce our conclusion that the legislature did not intend for motor vehicles to be included in the place of business exception of § 29-35 (a).

Furthermore, "[i]t is a familiar principle of statutory construction that where the same words are used in a statute two or more times they will ordinarily be given the same meaning in each instance." (Internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 266 Conn. 108, 123, 830 A.2d 1121 (2003). The term "place of business" appears several times throughout § 29-35 (a). Specifically, and as previously discussed, the statute allows the transportation of pistols or revolvers that are contained in the packaging in which they originally were contained at the time of sale "from the place of sale to the purchaser's residence or place of business . . . ." General Statutes § 29-35 (a). General Statutes § 29-35 (a) also allows a person to transport a handgun "from such person's place of residence or business to a place or individual where or by whom such [handgun] is to be repaired . . . ." In these contexts, the term "place of business" clearly signifies a fixed location one travels to and from. We see no reason why the legislature would have intended for that very same term to be given a different meaning in the same statutory subsection.

Finally, and perhaps most importantly, our reading of the place of business exception of § 29-35 (a) is supported, if not compelled, by the plain and unambigu-

ous provisions of its sister statute, namely, § 29-38 (a).[13] See, e.g., *Thames Talent, Ltd.* v. *Commission on Human Rights & Opportunities*, 265 Conn. 127, 136, 827 A.2d 659 (2003) (in ascertaining statutory meaning, we look to, inter alia, statute's relationship to other legislation). Indeed, any possible doubt as to whether a taxicab is a place of business under § 29-35 (a) is dispelled by the clear dictates of General Statutes § 29-38 (a), which provides in relevant part: "Any person who knowingly has, in any vehicle owned, operated or occupied by such person, any weapon, any pistol or revolver for which a proper permit has not been issued as provided in section 29-28 . . . shall be fined not more than one thousand dollars or imprisoned not more than five years or both . . . ." Unlike § 29-35 (a), § 29-38 contains no exception for a "place of business" and contains no other exception applicable to taxicabs. Consequently, the conduct of the defendant in the present case is proscribed by the express terms of § 29-38 (a).[14] In accordance with settled principles of statutory interpretation, therefore, our determination of whether the legislature intended a taxicab to be a place of business under § 29-35 (a) necessarily is guided by the plain strictures of § 29-38 (a). See, e.g., *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 310, 819 A.2d 260 (2003) (to ensure coherent construction of statutory provision, we look not only to provision at issue but also to broader statutory scheme); *Waterbury* v. *Washington*, 260 Conn. 506, 557, 800 A.2d 1102 (2002) (statutes relating to same subject matter are construed "so as to create a rational, coherent and consistent body of law"). More-

---

[13] The provisions of §§ 29-35 (a) and 29-38 (a) originally were adopted by the legislature in 1923 and 1935, respectively. Public Acts 1935, c. 303, § 2 (presently codified as amended at General Statutes § 29-38 [a]); Public Acts 1923, c. 252, §§ 9 and 10 (presently codified as amended at General Statutes § 29-35 [a]).

[14] We note that the defendant acknowledged as much at oral argument before this court.

over, we must presume that the legislature was fully cognizant of the provisions and import of § 29-35 (a) when it adopted the provisions of § 29-38 (a)[15] and that it perceived no conflict between them. See, e.g., *Hatt* v. *Burlington Coat Factory*, supra, 310 (legislature "is always presumed to know all the existing statutes and the effect that its action or non-action will have on any one of them" [internal quotation marks omitted]). If the legislature had intended to exempt taxicabs from the provisions of § 29-38, it easily could have expressed such an intent. See, e.g., *State* v. *Russo*, 259 Conn. 436, 450, 790 A.2d 1132 (if legislature had intended to limit access by law enforcement personnel to records of prescriptions for controlled substances, it easily could have expressed that intent), cert. denied, 537 U.S. 879, 123 S. Ct. 79, 154 L. Ed. 2d 134 (2002); cf. *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, supra, 266 Conn. 119 (court is "not permitted to supply statutory language that the legislature may have chosen to omit" [internal quotation marks omitted]). The fact that § 29-38 does not contain an exception for taxicabs convinces us that a taxicab does not fall within the purview of the place of business exception of § 29-35 (a) because it would be counterintuitive to conclude that our legislature would criminalize under one statute conduct that it intended to allow under another. Indeed, to conclude otherwise would frustrate the clear intent of the legislature, as manifested by the plain language of § 29-38, to criminalize the possession of unlicensed handguns in *all* motor vehicles, including taxicabs, except in the limited circumstances expressly identified in subsection (b) of that statutory section. See, e.g., *State* v. *DeFrancesco*, 235 Conn. 426, 436, 668 A.2d 348 (1995) ("[p]rinciples of statutory construction . . .

[15] See footnote 13 of this opinion (provisions of § 29-35 [a] originally were adopted by legislature in 1923 and provisions of § 29-38 [a] originally were adopted by legislature in 1935).

require us to construe a statute in a manner that will not thwart its intended purpose" [internal quotation marks omitted]).

The defendant contends that the trial court's interpretation of the place of business exception of § 29-35 (a) is not irreconcilable with the provisions of § 29-38. Specifically, the defendant claims that because § 29-38 (a) expressly authorizes the possession of a pistol in a motor vehicle if a permit has been issued pursuant to § 29-28, "it logically follows that [a person] who is exempt from obtaining a . . . permit under [§] 29-28 via the [§] 29-35 (a) 'place of business' exception . . . would also be exempt from prosecution for a violation of [§] 29-38, the statute prohibiting weapons in a motor vehicle."

The defendant's assertion that he would be exempt from prosecution under § 29-38 *if* he were exempt from the permit requirements of § 29-35 (a) does not address, let alone resolve, the issue before us, namely, whether the defendant, a taxicab driver, is, *in fact*, exempt from the provisions of § 29-35 (a) prohibiting a person from carrying a pistol or revolver without a permit. Indeed, the defendant appears to advance this argument merely to demonstrate that it is possible to fashion a plausible interpretation of § 29-38 that would render it linguistically compatible with the trial court's construction of § 29-35 (a). To achieve this end, however, the defendant must tease ambiguity from § 29-38 where none exists. That is, § 29-38 plainly prohibits the carrying of unlicensed handguns in motor vehicles—with exceptions not applicable here—and refers to § 29-28 *simply to identify the provisions governing the procedure for obtaining the permit that is required of persons who wish lawfully to possess a pistol or revolver in a vehicle.* See footnote 6 of this opinion. The defendant nevertheless asks us to conclude that § 29-38 *implicitly* exempts an unspecified number of motor vehicles from its provi-

sions simply because it *refers to* § 29-28, a statute that does no more than establish the procedures to be followed when applying for a gun permit. Well established rules of statutory construction compel us to conclude otherwise.

First, "[w]e will not impute to the legislature an intent that is not apparent from unambiguous statutory language in the absence of a compelling reason to do so." *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, 235 Conn. 185, 195, 663 A.2d 1001 (1995). Moreover, we are unwilling to conclude that the legislature would choose such a tortuous path to a correct understanding of §§ 29-35 (a) and 29-38. This is especially true in light of the list of exceptions that are expressly enumerated in § 29-38; see, e.g., *Gay & Lesbian Law Students Assn.* v. *Board of Trustees*, 236 Conn. 453, 476, 673 A.2d 484 (1996) ("[w]here express exceptions [to a statute] are made, the legal presumption is that the legislature did not intend to save other cases from the operation of the statute" [internal quotation marks omitted]); and the notable absence of any cross reference to § 29-35 (a) in § 29-38.

The defendant's argument is contrary to yet another applicable principle of statutory construction, namely, that "specific statutory provisions are presumed to prevail over more general statutory provisions dealing with the same overall subject matter." (Internal quotation marks omitted.) *State* v. *Andresen*, 256 Conn. 313, 329, 773 A.2d 328 (2001). As we previously discussed, § 29-35 (a) applies to the possession of a pistol or revolver *generally*, whereas § 29-38 applies specifically to the possession of such a weapon *in a motor vehicle.* In such circumstances, we presume that the specific provisions of the latter statute prevail over the more general provisions of the former statute.

Moreover, "we have long held that . . . exceptions to statutes are to be strictly construed with doubts

resolved in favor of the general rule rather than the exception and that those who claim the benefit of an exception under a statute have the burden of proving that they come within the limited class for whose benefit it was established." (Internal quotation marks omitted.) *Gay & Lesbian Law Students Assn.* v. *Board of Trustees*, supra, 236 Conn. 473–74. The defendant, however, would have us turn this precept on its head and conclude that a taxicab falls *within* the "place of business" *exception* of § 29-35 (a) and *outside* the *broadly inclusive language* of § 29-38.

Furthermore, because § 29-38, by its plain terms, is applicable to taxicabs, the trial court's interpretation of § 29-35 (a) places § 29-38 in constitutional jeopardy with respect to others similarly situated to the defendant. As we previously have explained, it would be illogical—indeed, it probably would be irrational—for the legislature to have criminalized conduct under § 29-38 that it has exempted from the proscription of § 29-35 (a). The trial court's interpretation of § 29-35 (a), however, would lead to just such a result. Thus, a taxicab driver who possesses a handgun in his taxicab in reliance on that construction of § 29-35 (a) would have a strong claim that his prosecution under § 29-38 for the very same conduct would be barred, under the due process clause of the fourteenth amendment, because he was not afforded fair warning that such conduct was prohibited. See, e.g., *State* v. *Moran*, 264 Conn. 593, 616, 825 A.2d 111 (2003) (due process requires that statutory scheme "afford a person of ordinary intelligence a reasonable opportunity to know what [conduct] is permitted or prohibited" [internal quotation marks omitted]); see also *State* v. *Perruccio*, 192 Conn. 154, 164, 471 A.2d 632 ("laws [must] give [a] person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he [or she] may act accordingly" [internal quotation marks omitted]), appeal dis-

missed, 469 U.S. 801, 105 S. Ct. 55, 83 L. Ed. 2d 6 (1984). The due process quagmire that would arise with respect to § 29-38 if, *but only if,* a taxicab is deemed to be a "place of business" for purposes of § 29-35 (a), runs afoul of a bedrock principle of statutory construction, namely, that courts "indulge in every presumption in favor of [a] statute's constitutionality. . . . [Thus, in] choosing between two constructions of a statute, one valid and one constitutionally precarious, we will search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent. . . . We undertake this search for a constitutionally valid construction when confronted with criminal statutes as well as with civil statutes." (Internal quotation marks omitted.) *State* v. *Webb,* 238 Conn. 389, 493, 680 A.2d 147 (1996). Never before has this court rejected a reasonable interpretation of one statute when to do so would render another statute unconstitutional, and we see no reason to do so now.

In addition to the foregoing problems, the construction of § 29-35 (a) adopted by the trial court and advanced by the defendant leads to bizarre results. Under the trial court's interpretation of § 29-35 (a), a taxicab driver lawfully may possess an unregistered handgun while operating a taxicab even though, under § 29-38, that same taxicab driver is prohibited from possessing any other weapon, including, for example, a BB gun or a knife with a blade that is four inches in length or longer. BB guns and knives, however, are considerably *less* dangerous than pistols and revolvers—especially pistols and revolvers in the hands of persons who have not successfully completed a course in the safe use of such weapons, which is a prerequisite to obtaining a permit for a pistol or revolver. See General Statutes § 29-28 (b). We see no reason why the legislature would have intended the anomalous result that flows from the trial court's construction of § 29-

35 (a) and, therefore, we will not impute such an intent to the legislature. See, e.g., *Vibert* v. *Board of Education*, 260 Conn. 167, 177, 793 A.2d 1076 (2002) (this court will not interpret statute "to reach . . . a bizarre or absurd result"); *Modern Cigarette, Inc.* v. *Orange*, 256 Conn. 105, 120, 774 A.2d 969 (2001) (statutes construed using common sense and assuming that reasonable and rational result was intended).

Finally, the trial court's construction of § 29-35 (a) is fundamentally flawed for yet another important reason: it is contrary to the purpose of the statute itself, namely, "to legislate the prohibition of unregistered handguns in the public sphere." *State* v. *Vickers*, supra, 260 Conn. 227. To conclude, as the trial court did, that taxicabs fall within the place of business exception of § 29-35 (a) will result in a proliferation of handguns in motor vehicles: street vendors and caterers, traveling salespersons, limousine drivers and a multitude of other persons who use their motor vehicles to conduct business—the Good Humor man included—would be authorized to carry handguns in those vehicles without first obtaining a permit in accordance with § 29-28. This result "undermine[s] the clear intent of the legislature to limit the number of unlicensed handguns in the public arena." Id., 228.

Indeed, under the trial court's interpretation of § 29-35 (a), a taxicab driver's "place of business" is, in effect, anywhere his taxicab happens to be located, whether that location is a school parking lot, a crowded city street or a residential neighborhood. The trial court sought to minimize this fact by reasoning that a taxicab driver is not truly in the public sphere when he is in his taxicab because he has the right both to exclude the public from his vehicle and to require any passengers to conform to certain rules. But the same may be said of virtually any driver operating any motor vehicle on any public road. The mere fact that a person has a control-

ling or ownership interest in the vehicle that he or she is driving, and therefore may exclude others from it, does not remove that automobile and its operator from the public arena.[16]

The defendant asserts that our conclusion today is "contrary to the notion that ambiguities within criminal statutes are ordinarily resolved in favor of the defendant," and that the rule of lenity compels an outcome of the case in his favor. We disagree. "[T]he touchstone of [the] rule of lenity is statutory ambiguity." (Internal quotation marks omitted.) *State* v. *Jason B.*, 248 Conn. 543, 555, 729 A.2d 760, cert. denied, 528 U.S. 967, 120 S. Ct. 406, 145 L. Ed. 2d 316 (1999). Thus, as the United States Supreme Court has explained, courts do not apply the rule of lenity unless "a reasonable doubt persists about a statute's intended scope *even after resort to the language and structure, legislative history, and motivating policies of the statute.*" (Emphasis altered; internal quotation marks omitted.) *Moskal* v. *United States*, 498 U.S. 103, 108, 111 S. Ct. 461, 112 L. Ed. 2d 449 (1990); accord *State* v. *Jason B.*, supra, 555; see also *Albernaz* v. *United States*, 450 U.S. 333, 342, 101 S. Ct. 1137, 67 L. Ed. 2d 275 (1981) ("Lenity thus serves only as an aid for resolving an ambiguity; it is not to be used to beget one. The rule comes into operation at the end of the process of construing what [the legislature] has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers."

---

[16] Indeed, under the trial court's interpretation of § 29-35 (a), a taxicab driver would be required to leave his unlicensed handgun in the taxicab upon exiting the vehicle, thereby arguably compounding the potential danger to the public. Under our interpretation of §§ 29-35 (a) and 29-38, however, a *licensed* handgun owner lawfully may remove his or her handgun from the taxicab at any time. Moreover, a licensed handgun owner who chooses to leave the handgun in his or her vehicle will have received mandatory training with regard to the proper storage and use of that handgun. See General Statutes § 29-28 (b). We believe this outcome is much more in keeping with the public safety concerns embodied in §§ 29-35 (a) and 29-38.

[Internal quotation marks omitted.]); *State* v. *Courchesne*, 262 Conn. 537, 556 n.15, 816 A.2d 562 (2003) (rejecting contention that rule of lenity applies whenever defendant musters plausible interpretation of criminal statute); *State* v. *Albert*, 252 Conn. 795, 803, 750 A.2d 1037 (2000) (rule of lenity does not require statutory interpretation that frustrates evident legislative intent). Because, after a careful examination of the language, context, legislative genealogy and purpose of § 29-35 (a), no reasonable doubt exists as to whether a taxicab is a "place of business" for purposes of § 29-35 (a), the rule of lenity is inapplicable.[17]

We note, finally, that although we conclude that the legislature did not intend to include taxicabs in the place of business exception of § 29-35 (a), it is equally apparent that the legislature also did not intend to create an absolute bar against a taxicab driver's possession of a handgun in his or her taxicab. Under our statutory scheme, the legislature merely intended for a taxicab driver, like any other person whose business may rely on a motor vehicle, to obtain a permit to carry a handgun

---

[17] The defendant also claims that the trial court's interpretation of § 29-35 (a) is supported by statutes of several other states that impliedly limit the place of business exception to fixed locations. See, e.g., Mich. Comp. Laws § 750.227 (2) (2001) ("[a] person shall not carry a pistol . . . except in his or her dwelling house, place of business, *or on other land possessed by the person*, without a license" [emphasis added]). We disagree that the language of any such sister state statute is pertinent to our inquiry because we must construe § 29-35 (a) in light of *its* language, and with proper regard for our own unique legislative scheme and history, in particular, § 29-38, and the interrelated genealogy of that provision and § 29-35 (a). Moreover, even if those out-of-state statutes were relevant to the interpretation of our statutory scheme, they simply do not buttress the defendant's contention; most of those statutes employ language that, like the Michigan statute, reflects the legislature's understanding that the term "place of business" connotes something affixed to the land. Indeed, the vast majority of states *prohibit* the possession of unlicensed handguns in taxicabs, and, to our knowledge, no state impliedly authorizes such possession. The defendant has provided no persuasive reason why we should construe § 29-35 (a) in such a manner.

before bringing it into his or her vehicle. This is sound public policy. Indeed, we can think of no good reason why *not* to require taxicab drivers to obtain a handgun permit—and the mandatory training on handgun use and safety—before allowing them to carry such deadly weapons while traversing the public highways of this state. Indeed, the requirement is commonsensical, and we believe that our statutory scheme reflects the legislature's exercise of that unassailably sound public policy judgment.[18]

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion BORDEN, NORCOTT and VERTEFEUILLE, Js., concurred.

ZARELLA, J., concurring. Although I regard this as a very close case, I concur in the result reached by the majority. I agree, in particular, with the conclusion of the majority that the trial court's interpretation of General Statutes § 29-35 (a), if allowed to stand, would place General Statutes § 29-38 in constitutional jeopardy with

---

[18] The defendant also cites the hazardous nature of the taxicab business as a reason for concluding that the legislature intended to exempt taxicab drivers from the general proscription of § 29-35 (a). Specifically, the defendant alludes to a federal study indicating that a significant number of taxicab drivers are murdered each year. Although we do not dispute that driving a taxicab entails certain risks, we disagree that those risks militate in favor of the trial court's interpretation of § 29-35 (a). Indeed, we reiterate that our reading of the statute does not bar a taxicab driver from possessing a handgun while operating a taxicab; a taxicab driver need only obtain a permit to do so. Moreover, to the extent that driving a taxicab poses certain risks, those risks are faced equally by taxicab drivers who concededly are not exempt from prosecution under § 29-35 (a) because they have no proprietary interest in the cab they are operating. Thus, if the dangerous nature of the activity of driving a taxicab truly were a reason to exempt taxicabs from the purview of § 29-35 (a), there is no reason why the legislature would not have provided such an exemption for *any and all* taxicab drivers and not just for those who happen to have a proprietary interest in the taxicabs that they are driving at any particular point in time.

respect to others similarly situated to the defendant because it would deprive such persons of fair warning as to the conduct permitted or prohibited under the statutory scheme. See, e.g., *State* v. *Moran*, 264 Conn. 593, 616, 825 A.2d 111 (2003); *State* v. *Perruccio*, 192 Conn. 154, 164, 471 A.2d 632, appeal dismissed, 469 U.S. 801, 105 S. Ct. 55, 83 L. Ed. 2d 6 (1984).

I also agree with the majority that the rule of lenity does not apply in this case because, upon an examination of the text of the statute and its relationship to other statutes; see Public Acts 2003, No. 03-154, § 1; it is clear beyond a reasonable doubt that a taxicab does not fall within the "place of business" exception of § 29-35 (a). I disagree, however, with the view of the majority that the court may examine, in any given case, extratextual sources to clarify the meaning of a criminal statute before applying the rule of lenity.

The majority relies on *Moskal* v. *United States*, 498 U.S. 103, 111 S. Ct. 461, 112 L. Ed. 2d 449 (1990), in stating that the rule of lenity does not apply unless "a reasonable doubt persists about a statute's intended scope *even after resort to the language and structure, legislative history, and motivating policies of the statute.*" (Emphasis in original; internal quotation marks omitted.) Majority opinion, p. 219, quoting *Moskal* v. *United States*, supra, 108. The court in *Moskal*, however, did not examine whether the use of legislative history and extratextual sources to resolve ambiguity in a statute is consistent with the fair warning rationale underlying the rule of lenity; see *Moskal* v. *United States*, supra, 107–108; and neither has this court. See *State* v. *Courchesne*, 262 Conn. 537, 611–12 n.8, 816 A.2d 562 (2003) (*Zarella, J.*, dissenting). My concern is that judicial reliance on the "legislative history" and "motivating policies" of a statute to clarify its meaning may compromise the purpose of the rule of lenity, namely, to provide "[a] fair warning . . . to the world in language that the

common world will understand, of what the law intends to do if a certain line is passed." (Internal quotation marks omitted.) *United States* v. *R. L. C.*, 503 U.S. 291, 308, 112 S. Ct. 1329, 117 L. Ed. 2d 559 (1992) (Scalia, J., with whom Kennedy and Thomas, Js., join, concurring in part and concurring in judgment). As I have noted previously, it is for this reason that "[s]everal members of the United States Supreme Court . . . have expressed their view that the rationale for the rule of lenity precludes consideration of extratextual sources to clarify an ambiguous statute." *State* v. *Courchesne*, supra, 611 n.8 (*Zarella, J.*, dissenting), citing *United States* v. *R. L. C.*, supra, 307 (Scalia, J., with whom Kennedy and Thomas, Js., join, concurring in part and concurring in judgment) ("it is not consistent with the rule of lenity to construe a textually ambiguous penal statute against a criminal defendant on the basis of legislative history"). Accordingly, this court's continued reference to the language of *Moskal* is unwarranted in the absence of its own examination of whether the use of extratextual sources to clarify an ambiguous statute is consistent with the principle of fair warning.

Furthermore, the United States Supreme Court has noted that "the need for fair warning will make it rare that legislative history or statutory policies will support a construction of a statute broader than that clearly warranted by the text . . . ." (Internal quotation marks omitted.) *United States* v. *R. L. C.*, supra, 503 U.S. 306 n.6 (plurality opinion). These words indicate that, even the highest court in our nation, to which the majority has turned for guidance, does not believe that extratextual sources always should be considered when applying the rule of lenity. I therefore do not agree with the majority's reliance on the quoted passage from *Moskal* because the passage suggests that the rule of lenity may be applied following routine consideration

of legislative history and other extratextual evidence of a statute's meaning.

Finally, to the extent that I believe that the rule of lenity precludes consideration of extratextual sources to clarify the meaning of a criminal statute, I disagree with the standard of statutory review employed by the majority at the outset of its opinion, which suggests that the court may examine extratextual evidence to resolve ambiguities in a criminal statute prior to applying the rule of lenity.

I concur in the majority opinion in all other respects.

KATZ, J., with whom SULLIVAN, C. J., joins, dissenting. The sole issue in this appeal is whether a taxicab falls within the "place of business" exception of General Statutes § 29-35 (a).[1] The majority agrees with

---

[1] General Statutes § 29-35, entitled "Carrying of pistol or revolver without permit prohibited. Exceptions," provides: "(a) No person shall carry any pistol or revolver upon one's person, except when such person is within the dwelling house or place of business of such person, without a permit to carry the same issued as provided in section 29-28. The provisions of this subsection shall not apply to the carrying of any pistol or revolver by any parole officer or peace officer of this state, or parole officer or peace officer of any other state while engaged in the pursuit of official duties, or federal marshal or federal law enforcement agent, or to any member of the armed forces of the United States, as defined by section 27-103, or of this state, as defined by section 27-2, when on duty or going to or from duty, or to any member of any military organization when on parade or when going to or from any place of assembly, or to the transportation of pistols or revolvers as merchandise, or to any person transporting any pistol or revolver while contained in the package in which it was originally wrapped at the time of sale and while transporting the same from the place of sale to the purchaser's residence or place of business, or to any person removing such person's household goods or effects from one place to another, or to any person while transporting any such pistol or revolver from such person's place of residence or business to a place or individual where or by whom such pistol or revolver is to be repaired or while returning to such person's place of residence or business after the same has been repaired, or to any person transporting a pistol or revolver in or through the state for the purpose of taking part in competitions, taking part in formal pistol or revolver training, repairing such pistol or revolver or attending any meeting or exhibition of an organized collectors' group if such person is a bona fide resident of the United States and is permitted to possess and carry a pistol or revolver

the state that the trial court improperly determined that a taxicab may constitute a place of business. Specifically, the majority concludes that, because a taxicab is a motor vehicle, taxicab drivers are not exempt under the place of business exception in § 29-35 (a). In essence, the majority determines that, even if the defendant, John Lutters, had a proprietary interest in his taxicab, his taxicab cannot constitute a place of business because of its mobility. I respectfully disagree with the majority. The issue is whether the legislature intended to exempt from the permit requirement a place of business that is not stationary. Because I have reasonable doubt about the application of the exemption to the defendant's taxicab, I would affirm the judgment of the trial court.

I

Like the majority, I begin with our well established principles of statutory interpretation in analyzing the

in the state or subdivision of the United States in which such person resides, or to any person transporting a pistol or revolver to and from a testing range at the request of the issuing authority, or to any person transporting an antique pistol or revolver, as defined in section 29-33. For the purposes of this subsection, 'formal pistol or revolver training' means pistol or revolver training at a locally approved or permitted firing range or training facility, and 'transporting a pistol or revolver' means transporting a pistol or revolver that is unloaded and, if such pistol or revolver is being transported in a motor vehicle, is not readily accessible or directly accessible from the passenger compartment of the vehicle or, if such pistol or revolver is being transported in a motor vehicle that does not have a compartment separate from the passenger compartment, such pistol or revolver shall be contained in a locked container other than the glove compartment or console. Nothing in this section shall be construed to prohibit the carrying of a pistol or revolver during formal pistol or revolver training or repair.

"(b) The holder of a permit issued pursuant to section 29-28 shall carry such permit upon one's person while carrying such pistol or revolver."

Section 29-35 (a) was amended subsequent to June of 2001, the time of the defendant's alleged offenses, however, the portion of subsection (a) relevant in this case had only three minor technical changes. See Public Acts 2003, No. 03-19, § 68; see also Public Acts 2001, No. 01-130, § 9. For purposes of clarity, I refer herein to the current codification of the statute.

defendant's claim. Our legislature recently has enacted No. 03-154, § 1, of the 2003 Public Acts, which provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." In the present case, the relevant statutory text and the relationship of that text to other statutes do not reveal a meaning that is plain and unambiguous. Accordingly, the analysis is not limited and, like the majority, I look to other factors relevant to the inquiry into the meaning of § 29-35, including its legislative history and the circumstances surrounding its enactment and its purpose.

Additionally, this case implicates our rigorous rules of construction regarding criminal statutes. In specific, "[w]e have long held that [c]riminal statutes are not to be read more broadly than their language plainly requires . . . . Thus, we begin with the proposition that [c]ourts must avoid imposing criminal liability where the legislature has not *expressly* so intended . . . and ambiguities are ordinarily to be resolved in favor of the defendant. . . . In other words, penal statutes are to be construed strictly and not extended by implication to create liability which no language of the act purports to create. . . . [T]his does not mean [however] that every criminal statute must be given the narrowest possible meaning in complete disregard of the purpose of the legislature. . . . No rule of construction . . . requires that a penal statute be strained and distorted in order to exclude conduct clearly intended to be within its scope—nor does any rule require that the act be given the narrowest meaning. It is sufficient if the words are given their fair meaning in accord with

the evident intent of [the legislature]. . . . The rule that terms in a statute are to be assigned their ordinary meaning, unless context dictates otherwise . . . also guides our interpretive inquiry." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Scott*, 256 Conn. 517, 531–32, 779 A.2d 702 (2001).

Finally, I note the rule of lenity, which applies whenever there is a reasonable doubt as to the scope of a statute. See, e.g., *State* v. *Sostre*, 261 Conn. 111, 120, 802 A.2d 754 (2002). This rule is "not merely a convenient maxim of statutory construction." *Dunn* v. *United States*, 442 U.S. 100, 112, 99 S. Ct. 2190, 60 L. Ed. 2d 743 (1979). Rather, as the United States Supreme Court consistently has reaffirmed, the rule of lenity is rooted in principles of due process and the separation of powers. See, e.g., id. (rule rooted in fundamental principles of due process); *United States* v. *Bass*, 404 U.S. 336, 348, 92 S. Ct. 515, 30 L. Ed. 2d 488 (1971) (two policies behind rule of lenity are to give " 'fair warning . . . of what the law intends to do if a certain line is passed' " and that "legislatures and not courts should define criminal activity"); *United States* v. *Wiltberger*, 18 U.S. (5 Wheat.) 76, 95, 5 L. Ed. 73 (1820) ("The rule that penal laws are to be construed strictly . . . is perhaps not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals . . . and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department.").

## II

The language of the statute itself is the first stop on this journey. In *State* v. *Vickers*, supra, 260 Conn. 221–22, the issue on appeal was whether the defendant, a welder, who was found to be in possession of a firearm when he was summoned to his supervisor's office at

his employer's manufacturing plant, was at his place of business such that he was exempt from the permit requirement of General Statutes § 29-28. As we explained therein, the phrase "place of business" is not defined explicitly in either the text of § 29-35 (a), or anywhere else in the General Statutes. Therefore, our consideration in *Vickers* of the meaning of the phrase as used in § 29-35 (a) was an issue of first impression. Id., 224. We looked first to the common understanding expressed in the law and in dictionaries; see *Caldor, Inc.* v. *Heffernan*, 183 Conn. 566, 570–71, 440 A.2d 767 (1981); as well as to sentence structure and the remainder of the statutory section delineating the specific occupations excluded from the permit requirement to conclude that the legislature did not intend the phrase "place of business" to refer to all employees at all places of employment. *State* v. *Vickers*, supra, 224–25. Rather, we determined that the legislature had intended to restrict the presence of unlicensed handguns in the public sphere, and accordingly, we concluded that the statutory exception to the permit requirement is extended only to individuals within their dwelling houses or in their place of business in which they have a proprietary or controlling interest and to those who fall under the specific occupations so delineated. Id., 229.

The state relies on this legislative intent to argue that, because the legislature's goal was to limit the number of firearms in the public sphere carried by persons untrained in their use, a motor vehicle *cannot* be part of the place of business exception. In determining the issue, the majority endorses much of the state's reasoning supporting its proposed interpretation. I address those arguments separately.

A

First, the state points to General Statutes § 29-38,[2] which criminalizes the possession of a weapon in a

[2] General Statutes § 29-38, entitled "Weapons in vehicles," provides: "(a) Any person who knowingly has, in any vehicle owned, operated or occupied by such person, any weapon, any pistol or revolver for which a proper permit has not been issued as provided in section 29-28 or any machine gun which has not been registered as required by section 53-202, shall be fined not more than one thousand dollars or imprisoned not more than five years or both, and the presence of any such weapon, pistol or revolver, or machine gun in any vehicle shall be prima facie evidence of a violation of this section by the owner, operator and each occupant thereof. The word 'weapon', as used in this section, means any BB. gun, any blackjack, any metal or brass knuckles, any police baton or nightstick, any dirk knife or switch knife, any knife having an automatic spring release device by which a blade is released from the handle, having a blade of over one and one-half inches in length, any stiletto, any knife the edged portion of the blade of which is four inches or over in length, any martial arts weapon or electronic defense weapon, as defined in section 53a-3, or any other dangerous or deadly weapon or instrument.

"(b) The provisions of this section shall not apply to: (1) Any officer charged with the preservation of the public peace while engaged in the pursuit of such officer's official duties; (2) any security guard having a baton or nightstick in a vehicle while engaged in the pursuit of such guard's official duties; (3) any person enrolled in and currently attending a martial arts school, with official verification of such enrollment and attendance, or any certified martial arts instructor, having any such martial arts weapon in a vehicle while traveling to or from such school or to or from an authorized event or competition; (4) any person having a BB. gun in a vehicle provided such weapon is unloaded and stored in the trunk of such vehicle or in a locked container other than the glove compartment or console; and (5) any person having a knife, the edged portion of the blade of which is four inches or over in length, in a vehicle if such person is (A) any member of the armed forces of the United States, as defined in section 27-103, or any reserve component thereof, or of the armed forces of this state, as defined in section 27-2, when on duty or going to or from duty, (B) any member of any military organization when on parade or when going to or from any place of assembly, (C) any person while transporting such knife as merchandise or for display at an authorized gun or knife show, (D) any person while lawfully removing such person's household goods or effects from one place to another, or from one residence to another, (E) any person while actually and peaceably engaged in carrying any such knife from such person's place of abode or business to a place or person where or by whom such knife is to be repaired, or while actually and peaceably returning to such person's place of abode or business with such knife after the same has been repaired, (F) any person

motor vehicle without a permit. The state argues that, because it is a crime for someone to have a weapon in a motor vehicle without a permit, reading §§ 29-35 and 29-38 together, and keeping in mind the goal to limit the access to firearms in public, the legislature could not have intended to allow a motor vehicle to constitute a place of business. The state contends that § 29-38, the more specific statute, must prevail over § 29-35, the more general provision dealing with the same subject matter. Subsection (b) of § 29-38 contains a list of occupations and situations to which the proscriptions in subsection (a) do not apply, and the state maintains that, because taxicab drivers are not included therein, the legislature did not intend to exempt them from the permit requirement.

The defendant has several responses. First, he recognizes the prohibitions listed in § 29-38, but points out that possession of a pistol in a motor vehicle is not prohibited, but merely is circumscribed to persons with permits. Therefore, the legitimate concerns expressed by the state, and espoused by the majority, about the presence of firearms in the public sphere do not result in possession of the weapon being outlawed, but merely constrained. Additionally, the defendant suggests that, by incorporating the permit statute, § 29-28, in § 29-38, it equally is logical to conclude that someone who is exempt from needing to obtain a permit via the § 29-35 (a) "place of business" exemption, would also be exempt from prosecution for a violation of § 29-38. Furthermore, because the legislature did not intend to exclude *all* taxicab drivers from the permit requirement, but only those whose taxicabs fall within the "place of business" exception, its failure to include that category

holding a valid hunting, fishing or trapping license issued pursuant to chapter 490 or any salt water fisherman while having such knife in a vehicle for lawful hunting, fishing or trapping activities, or (G) any person participating in an authorized historic reenactment."

of driver in subsection (b) of § 29-38 does not prohibit an interpretation that a taxicab *might* qualify under § 29-35. The defendant contends, therefore, that §§ 29-35 and 29-38 can be read in harmony, limiting the possession of firearms to those persons who have permits pursuant to § 29-28, or who fall within the exceptions contained in either § 29-35 or § 29-38. In other words, according to the defendant, by incorporating the permit statute, § 29-28, in the motor vehicle statute, § 29-38, it is not irrational as a matter of statutory construction to conclude that someone who is exempt from needing to obtain a permit via the § 29-35 (a) "place of business" exception would also be exempt from prosecution for a violation of § 29-38. Although I do not find the defendant's reasoning unassailable, I also am not persuaded by the majority's analysis.[3] Therefore, upon reflection

[3] The majority reasons that it would be nonsensical to view the legislature as permitting a loaded pistol to be freely transported in society while prohibiting less dangerous weapons such as a BB gun, stun gun, brass knuckles, or a nightstick. I suggest that this is the same anomaly permitted by the legislature in its decision to allow a firearm in a motor vehicle when a permit has been granted pursuant to § 29-28, but not allow these other weapons for which a permit is not authorized. See General Statutes § 29-38.

The majority also is persuaded that, as a practical matter, the defendant's proposed reading of the statute would be unworkable. For example, if a taxicab driver left his vehicle to get lunch, he would be required to leave his loaded pistol in the taxicab and the pistol would potentially be accessible to the public at large. This trepidation exists either way this case is resolved. The permit requirement certainly would allow the taxicab driver to remove the gun at any time, but does not guarantee that he will not leave the firearm unattended in the vehicle nonetheless.

The majority also relies on the permit requirement in § 29-28 as evidence of the legislature's intent to minimize the possible harm to the public from firearms through misuse or accident. To allow a person without training to have a pistol in a motor vehicle greatly increases the likelihood of harm because, if the firearm is discharged, the bullet likely will exit the vehicle and enter the public arena. Finally, the majority relies on the "six limited exceptions to § 29-35's general prohibition against the possession of a handgun without a permit outside of a dwelling house or place of business" and the "severe restrictions on the manner in which an unlicensed handgun may be transported" as representative of "the legislature's recognition that, on occasion, it may be necessary to transport an unlicensed handgun from a dwelling house or place of business to another location for a specific and

of all the relevant considerations, I consider the defendant's construal sufficient to provide me with reasonable doubt regarding the operation of the statute.

Indeed, the language used by other states to limit gun possession is far less ambiguous. Our legislature, in drafting § 29-35, specifically *could have* limited the "place of business" exception to fixed businesses, as evidenced in a number of sister state statutes. See, e.g., Ala. Code § 13A-11-73 (Michie 1994) (exception for "fixed place of business"); Idaho Code § 18-3302 (7) (Michie 1997) (same); 720 Ill. Comp. Stat. Ann. § 5/24-1 (a) (4) (West 2003) (same); Ind. Code § 35-47-2-1 (Lexis 1998) (same); Kan. Stat. Ann. § 21-4201 (a) (4) (1995) (same); N.J. Stat. Ann. § 2C:39-6e (West 1995) ("[f]or the purposes of this section, a place of business shall be deemed to be a fixed location"); N.D. Cent. Code § 62.1-03-01 (2) (b) (1995) (exception for "fixed place of business"); Pa. Cons. Stat. Ann. § 6106 (a) (1) and (2) (West 2000) (same); S.C. Code Ann. § 16-23-20 (8) (1985) (same); Wash. Rev. Code Ann. § 9.41.050 (1) (a) (West 1998) (same).[4]

---

limited purpose . . . [and] is indicative of the overriding purpose of § 29-35 (a), namely, to curtail the possession of unlicensed handguns in the public arena." As the defendant cautions, however, the exposure to the danger of firearms can be far greater in stationary places of business, like restaurants, where there are more potential victims than in a motor vehicle. Moreover, these various exceptions deal with *transportation to and from* a dwelling house or place of business, and do not address the issue of what is a dwelling house or a place of business.

[4] Similarly, five other states that have enacted statutes addressed to the carrying of a weapon in a motor vehicle have differentiated between private automobiles and common carriers, thereby providing better guidance. See Ala. Code § 13A-11-74 (Michie 1994) (providing exception for "any common carrier, except taxicabs"); Colo. Rev. Stat. § 18-12-105 (2) (2003) ("[i]t shall not be an offense if the defendant was . . . [b] A person *in a private automobile or other private means of conveyance* who carries a weapon for lawful protection of such person's or another's person or property while traveling" [emphasis added]); N.M. Stat. Ann. § 30-7-2 (A) (Michie 1994) ("[u]nlawful carrying of a deadly weapon consists of carrying a concealed loaded firearm or any other type of deadly weapon anywhere, except . . . [2] *in a private automobile or other private means of conveyance,* for

Finally, I note statutes in other states and jurisdictions in which the legislature provided some modifying language within the statute creating the *unambiguous* grounds upon which to conclude that place of business refers solely to land. See Ariz. Rev. Stat. Ann. § 13-3102 (B) (2001) (prohibition against carrying deadly weapon without permit "shall not apply to a person in his dwelling, on his business premises or *on real property owned or leased by that person*" [emphasis added]); D.C. Code Ann. § 22-4504 (a) (LexisNexis 2001) ("[n]o person shall carry . . . a pistol, without a license . . . [1] . . . in a place other than the person's dwelling place, place of business, or *on other land possessed by the person*" [emphasis added]); Iowa Code § 724.4 (4) (a) (2001) (defense when person armed with dangerous weapon "in the person's own dwelling or place of business, or *on land owned or possessed by the person*" [emphasis added]); Mich. Comp. Laws § 750.227 (2) (2003) ("[a] person shall not carry a pistol . . . except in his or her dwelling house, place of business, or *on other land possessed by the person*, without a license" [emphasis added]); R.I. Gen. Laws § 11-47-8 (a) (2002) ("[n]o person shall, without a license or permit . . . carry a pistol or revolver . . . except in his or her dwelling house or place of business or *on land possessed by him or her*" [emphasis added]); S.D. Codified Laws § 22-14-11

---

lawful protection of the person's or another's person or property" [emphasis added]); Or. Rev. Stat. Ann. § 166.250 (2) (Lexis Sup. 1998) (providing exception for possession of handgun without permit "within the person's place of residence or place of business . . . . [b] As used in this subsection, 'residence' includes a recreational vessel or *recreational vehicle* while used, for whatever period of time, as residential quarters." [Emphasis added.]); Va. Code Ann. § 18.2-308 (C) (LexisNexis Cum. Sup. 2002) ("[t]his section shall . . . not apply to any of the following individuals while in the discharge of their official duties, or while in transit to or from such duties . . . [4] Conservators of the peace, except that the following conservators of the peace shall not be permitted to carry a concealed handgun without obtaining a permit . . . [c] *drivers, operators, or other persons in charge of any motor vehicle carrier of passengers for hire*" [emphasis added]).

(Michie 1998) (prohibition against carrying concealed pistol or revolver without permit "shall not apply to any person . . . in his own dwelling house or place of business or *on land owned or rented by him or by a member of his household*" [emphasis added]). The absence of such modifying language in § 29-35 is persuasive evidence that our legislature did not intend necessarily to further limit the exceptions in § 29-35.

### B

The state next argues that the statutory development of §§ 29-35 and 29-38 reveals that the legislature never intended the place. of business exception to apply to motor vehicles. In its original form, § 29-35 provided that "[n]o person shall carry any pistol or revolver in or upon any vehicle or upon his person, except when such person shall be within his dwelling house or place of business, without a permit to carry the same issued as hereinbefore provided." Public Acts 1923, c. 252, § 9. Section 10 of that same Public Act provided for exemptions to § 9 based on certain occupations and in certain circumstances. Public Acts 1923, c. 252, § 10. The wording remained virtually identical through 1930, when those two sections of the Public Act were codified together in the revised statutes. See General Statutes (1930 Rev.) § 2671. Then, in 1935, the legislature created two separate statutes, one pertaining to carrying a pistol without a permit; General Statutes (Cum. Sup. 1935) § 1009c; the other pertaining to having a pistol in a vehicle. See General Statutes (Cum. Sup. 1935) § 1010c. The "place of business" exception was not included in § 1010c. According to the state, the legislature's failure to carry over the exception indicates that it did not intend for the exception to apply when motor vehicles were involved.

As the defendant points out, there is no legislative history available for the 1935 provisions. Therefore,

it is hard to look to that change as expressing any authoritative direction on the subject. As we recognized in *State* v. *Vickers,* supra, 260 Conn. 227–28, however, subsequent legislative history, specifically as it pertains to No. 81-222 of the 1981 Public Acts, clearly expressed an intent to minimize the possession of firearms in public.[5] See 24 S. Proc., Pt. 10, 1981 Sess., p. 3146, remarks of Senator Howard T. Owens, Jr. The state is correct that that always has been a significant consideration.

The interest of protecting the public at large from the unrestricted possession of guns traveling in the public sphere must be balanced, however, against that of property owners in being able to protect their property. See *State* v. *Vickers,* supra, 260 Conn. 224–25. Although, in *Vickers,* we did not define the phrase "public sphere," we looked to the "common understanding expressed in the law and in dictionaries." (Internal quotation marks omitted.) Id., 224. Doing so again in the present case, I note that the word "public" means: "Open to all; notorious. Common to all or many; general; open to common use. Belonging to the people at large; relating to or affecting the whole people of a state,

---

[5] Public Act 81-222, § 2, amended § 29-35 (a) to exempt "any person carrying a pistol or revolver to and from a testing range at the request of the issuing authority, or to any person carrying an antique pistol or revolver . . . ." It also amended General Statutes § 29-37, the penalty provision of the gun control statutes, to provide for a mandatory minimum sentence of one year for violations of § 29-35 (a). Senator Howard T. Owens, Jr., explained that the purpose of the mandatory minimum sentence was to provide "a warning to those [who] might go out and use [a] handgun for some illicit reason . . . to leave their handgun at home, because if they do [not] and they're caught with it . . . they have the problem of this mandatory sentence." 24 S. Proc., Pt. 10, 1981 Sess., p. 3146. During the discussion of the bill in the House of Representatives, Representative Robert G. Jaekle expressed a similar rationale: "If you want to keep your gun in your home or place of business, you don't even need a permit; but if you want to carry it out on the street where you and I and our constituents walk, by golly, get a permit. That's what our present law says. That's what this bill seeks to enforce." 24 H.R. Proc., Pt. 12, 1981 Sess., pp. 3845–46.

nation, or community; not limited or restricted to any particular class of the community." Black's Law Dictionary (6th Ed. 1990). Weighed against that consideration is the right to protect one's property interest. Because a mere employee has no property interest to be balanced against the public interest, however, we concluded in *Vickers* that the employee in that case was not exempt from the permit requirement.[6] *State* v. *Vickers*, supra, 225. A person who has a proprietary interest in his place of business has a recognized interest in protecting that property, however, and when that person is within his place of business, he is *not* in the public sphere. That remains as true in a taxicab as it does in a store, a restaurant, a club, a theatre, or the like. Indeed, as the trial court recognized in this case, the taxicab driver has the right to exclude the public, to require a passenger to conform to certain rules, and to protect his property.

### III

The state next argues that a decision that recognizes a taxicab as a place of business for purposes of an

---

[6] In *State* v. *Vickers*, supra, 260 Conn. 225, we noted that "[t]he remainder of [§ 29-35 (a)] delineates the specific jobs that also are excluded from the permit requirement." See also footnote 1 of this dissenting opinion. "We have stated that [u]nless there is evidence to the contrary, statutory itemization indicates that the legislature intended [a] list to be exclusive." (Internal quotation marks omitted.) *State* v. *Vickers*, supra, 225. Therefore, we determined that "the legislature did not intend the phrase 'place of business' to refer to all employees at all places of employment." Id. Rather, "the statutory exception is extended only to individuals within their dwelling houses or in their place of business in which they have a proprietary or controlling interest and to those who fall under the specific occupations so delineated." Id., 226.

In the present case, the issue is not whether the statutory exception of § 29-35 applies to all taxicab drivers, as an occupational class. Rather, the question is whether a taxicab is a place of business. If a taxicab indeed is a place of business, then the individual who has a proprietary or controlling interest in that taxicab is exempt from the permitting requirements of § 29-35, irrespective of whether he falls within a specific occupation delineated therein. Accordingly, the inclusion of the list of excluded occupations is of little value to the inquiry.

exemption from carrying a pistol without a permit would be an anomaly.[7] Indeed, the state contends that "[a]ll the states that have considered the issue have, for various reasons, concluded that the 'place of business' exception should not be applied to taxicabs or other mobile businesses." Other than the aforementioned states in which the pertinent statutes provide specific linguistic guidance on the issue of whether a taxicab may constitute a place of business; see part II A of this dissenting opinion; I have found only three states in which the courts have acted in the absence of such direction in deciding whether a taxicab can be a place of business.

The courts in New York are split on whether a taxicab constitutes a place of business under the exception in § 265.02 (4) of the New York Penal Laws. Compare *People* v. *Romero*, 280 App. Div. 2d 316, 316–17, 720 N.Y.S.2d 145 (2001) ("police officer's testimony showing that the vehicle was a regular passenger car and not a taxi was sufficient evidence upon which the jury could conclude that the vehicle was not [the] defendant's 'place of business', and there was no evidence to the contrary"), appeal denied, 96 N.Y.2d 806, 750 N.E.2d 86, 726 N.Y.S.2d 384 (2001), *People* v. *Solomon*, 253 App. Div. 2d 692, 693, 679 N.Y.S.2d 97 (1998) (concluding that "[d]efendant was not in his 'place of business' when he stood on the street corner near his cab" without addressing issue of whether taxicab is place of business), appeal denied, 92 N.Y.2d 1037, 707 N.E.2d 459, 684 N.Y.S.2d 504 (1998), *People* v. *Santana*, 77 Misc. 2d 414, 415, 354 N.Y.S.2d 387 (1974) (extending place of business exception to driver who had exited his

---

[7] Certainly, it would not be an anomaly in Connecticut to recognize that a building need not be stationary. Indeed, the legislature has chosen to treat stationary structures and motor vehicles identically for purposes of determining whether a burglary has transpired. See General Statutes § 53a-100 (a) (1) (" '[b]uilding' in addition to its ordinary meaning, includes any . . . vehicle").

taxicab with revolver), *People* v. *Anderson*, 74 Misc. 2d 415, 419, 344 N.Y.S.2d 15 (1973) ("gypsy" cab is place of business), and *People* v. *Santiago*, 74 Misc. 2d 10, 11, 343 N.Y.S.2d 805 (1971) (taxicab is place of business) with *People* v. *Khudadzade*, 156 App. Div. 2d 384, 384–85, 548 N.Y.S.2d 336 (1989) ("under the facts of this case," which opinion did not delineate, "the defendant's taxi cab and the car service office from which his vehicle had been dispatched were not his places of business"), appeal denied, 75 N.Y.2d 814, 551 N.E.2d 1242, 552 N.Y.S.2d 564 (1990), *People* v. *Francis*, 45 App. Div. 2d 431, 433, 358 N.Y.S.2d 148 (1974) (stating, in dicta, that taxicab is not place of business, and citing *People* v. *Levine*, 42 App. Div. 2d 769, 346 N.Y.S.2d 756 [1973], for that proposition), aff'd, 38 N.Y.2d 150, 152, 341 N.E.2d 540, 379 N.Y.S.2d 21 (1975), *People* v. *Levine*, supra, 769 (summarily affirming judgment of conviction of felony weapons possession charge without specifically addressing underlying facts or place of business exception), and *People* v. *Abbatiello*, 129 Misc. 2d 831, 832–33, 494 N.Y.S.2d 625 (1985) (stating, in dicta, that taxicab is not place of business). The New York Court of Appeals, while recognizing the issue of whether a taxicab constitutes a place of business under § 265.02 (4) of the New York Penal Laws, expressly has declined the opportunity to resolve it. *People* v. *Francis*, 38 N.Y.2d 150, 152, 341 N.E.2d 640, 379 N.Y.S.2d 21 (1975) ("we do not today decide the question of whether the place of business exception should apply to one in defendant's position"). Accordingly, the law in New York remains unsettled concerning the applicability of the place of business exception to taxicabs. See *People* v. *Malave*, 124 Misc. 2d 210, 215, 476 N.Y.S.2d 422 (1984) (noting "the unsettled state of the case law" concerning meaning of "place of business"); *People* v. *Allison*, 117 Misc. 2d 463, 464 n.1, 458 N.Y.S.2d 496 (1983) (noting disagreement among New York courts concerning issue

of whether taxicab is place of business); *People* v. *McWilliams*, 96 Misc. 2d 648, 653–54, 409 N.Y.S.2d 610 (1978) (noting "that this area of the law is at best, unsettled," and concluding that "[i]f the 'place of business exception' has any application to a taxicab, it should apply to the taxi driver who possesses a loaded firearm in his taxi, without utilizing it for any purpose outside of his role as a driver. Since there has been no definitive appellate determination on this particular issue, its resolution should be left to the trier of fact.").

The courts in California similarly have been indecisive concerning the question of whether the place of business exception of § 12026 of the California Penal Code applies to taxicabs.[8] In *People* v. *Marotta*, 128 Cal. App. 3d Sup. 1, 6, 180 Cal. Rptr. 611 (1981), the Appellate Department of the Superior Court concluded that the place of business exception applies to taxicabs. The court reasoned that a taxicab "is as much a place of business as a store in a fixed location. This is where the cab driver worked and collected his fees. The driver had no other business location which the cab served to facilitate, such as a store's delivery truck, where the truck is not the location of the enterprise, but merely the means to facilitate the store's business." Id., 5. The court further stated: "The term 'place of business' has no set or established meaning in California case or code law. Importing into these words the limitation of a fixed geographic location is unsupported in the law. In California's highly mobile culture many business enterprises have no fixed geographic location. Even such staid institutions as banks often use mobile facilities." Id., 6. Finally, the court noted that, "[h]ad the Legisla-

---

[8] Section 12026 of the California Penal Code provides an exception for weapons kept within one's "place of residence" or "place of business." In 1988, the California legislature expanded § 12026 to include an exception for weapons kept "on private property owned or lawfully possessed by the citizen or legal resident." Cal. Penal Code § 12026; see also *People* v. *Melton*, 206 Cal. App. 3d 580, 593, 253 Cal. Rptr. 661 (1988).

ture intended to . . . exclude vehicles from the compass of the words 'place of business,' it could easily have done so." Id.

Thereafter, in *People* v. *Wooten*, 168 Cal. App. 3d 168, 173, 214 Cal. Rptr. 36 (1985), the California Court of Appeal declined to extend the place of business exception to the case of a bounty hunter who had been convicted of carrying a concealed, loaded pistol in the glove compartment of his pickup truck. Noting that "*Marotta* is readily distinguishable," the court reasoned: "While taxicab drivers must do business in their cabs, bounty hunters do not. Their job is to get out of their car and arrest bail jumpers, not to run over them. The vehicle is simply a means to transport the bounty hunter. Unlike a taxi driver whose work cannot be done without a vehicle, bounty hunters may leave their own cars behind and use airplanes, buses, trains or taxis to pursue bail jumpers." Id. The court went on to criticize the reasoning of *Marotta*, remarking that "[t]he natural meaning of the term 'place of business' is a fixed location," and does not include mobile businesses. Id. Additionally, the court concluded that § 12026 of the California Penal Code was not unconstitutionally vague because "[t]he phrase 'place of business' has a [narrow] meaning . . . [that] is used to describe stores, offices, warehouses, etc. . . . [and] not mobile pieces of personal property." Id., 174–75. Nonetheless, *Wooten* did not overrule *Marotta* explicitly, nor have any more recent decisions.

Finally, I note that the Arkansas Supreme Court decisively has interpreted the exceptions to that state's statute prohibiting the carrying of a weapon without a permit. Ark. Code Ann. § 5-73-120 (c) (Michie Sup. 2003) provides in relevant part: "It is a defense to a prosecution under this section that at the time of the act of carrying a weapon . . . [c] [t]he person is in his or her own dwelling, place of business, or on property in which

he or she has a possessory or proprietary interest . . . ." In *Boston* v. *State*, 330 Ark. 99, 101, 952 S.W.2d 671 (1997), the court concluded that this exception does not apply to taxicabs. Because "[i]n three of the other exemption sections [of § 5-73-120 of the Arkansas Code Annotated], the legislature created exceptions in instances where a person was in an automobile," the court held that "[t]he exemption for a 'business' is contained in a subsection of the statute which pertains to real property . . . ." Id. Therefore, these jurisdictions provide little guidance or insight into whether a decision that a taxicab can be a place of business for purposes of an exemption from carrying a pistol without a permit would indeed be an anomaly.

## IV

Finally, I return to the rule of lenity. "When the statute in question is one of a criminal nature . . . we must refrain from imposing criminal liability [when] the legislature has not expressly so intended. . . . [C]riminal statutes are not to be read more broadly than their language plainly requires and ambiguities are ordinarily to be resolved in favor of the defendant. . . . Finally, unless a contrary interpretation would frustrate an evident legislative intent, criminal statutes are governed by the fundamental principle that such statutes are strictly construed against the state." (Citations omitted; internal quotation marks omitted.) *State* v. *Davis*, 255 Conn. 782, 788–89, 772 A.2d 559 (2001).

In *State* v. *Harrell*, 238 Conn. 828, 832, 681 A.2d 944 (1996), emphasizing that a criminal statute should not be applied so as to impose criminal liability unless the legislature has *"expressly* so intended"; (emphasis in original); we "determined as a matter of statutory interpretation that the word 'murder' as used in § 53a-54b means intentional murder as defined by Public Acts 1973, No. 73-137, § 2, now codified as [General Statutes]

§ 53a-54a (a). [See id., 835–36.] Therefore, we concluded in *Harrell* that the defendant's conviction for arson murder in violation of [General Statutes] § 53a-54d could not serve as a predicate murder for purposes of the capital felony statute." *State* v. *Coltherst*, 263 Conn. 478, 500, 820 A.2d 1024 (2003), citing *State* v. *Harrell*, supra, 839. Similarly, in *State* v. *Johnson*, 241 Conn. 702, 712, 699 A.2d 57 (1997), we rejected the state's claim that the defendant's conviction of felony murder could serve as the predicate for capital felony when the defendant's codefendant had an intent to kill, concluding that the "requirement [under General Statutes § 53a-54b] of an intentional murder refers to the underlying murder that the defendant was *convicted of* . . . ." (Emphasis in original.)

In *State* v. *Sostre*, supra, 261 Conn. 142, we stated that "[e]ven if we were to conclude, however, that it is simply uncertain whether [General Statutes] § 53a-46a (i) (6) was intended to apply to a capital felony committed during the course of a robbery, *when a reasonable doubt persists about a statute's intended scope even after resort to the language and structure, legislative history, and motivating policies of the statute . . . we apply the rule of lenity and resolve any ambiguity in favor of the defendant.*" (Citation omitted; emphasis added; internal quotation marks omitted.) See *Moskal* v. *United States*, 498 U.S. 103, 108, 111 S. Ct. 461, 112 L. Ed. 2d 449 (1990) ("we . . . [reserve] lenity for those situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to 'the language and structure, legislative history, and motivating policies' of the statute" [emphasis in original]). The defendant argues in the present case that if the language of § 29-35, its legislative history and the motivating policies do not *clearly* support his interpretation, we are *at least* faced with an ambiguity, thereby implicating

the rule of lenity, which favors his construction of the exemption provision.

Because I have a reasonable doubt about the application of the exemption to the defendant's taxicab, I agree with the defendant. Indeed, the absence in § 29-35 of qualifying terms such as "fixed," "land" or "real property," on the one hand, or explicit reference to motor vehicles, on the other; see footnote 4 of this dissenting opinion; makes the defendant's invocation of the rule of lenity particularly appropriate. Therefore, I would conclude that the defendant's taxicab, over which he had exclusive control, falls within the "place of business" exemption of § 29-35 (a). In so concluding, I recognize the laudatory general purpose of § 29-35 to control the threat to public safety in the indiscriminate possession and carrying of concealed and loaded weapons, while also giving effect to the express exception that allows businesspersons to protect their property. Indeed, I cannot choose to take note of one legislative purpose, so as to achieve the admirable social end of stronger gun control, while ignoring the intent of the legislative purpose embodied in the exceptions. That goal—to allow businesspersons to possess weapons to protect their property—is as important to a taxicab driver as it is to a businessperson in a fixed locale,[9] while the possible danger to the public posed by taxicab

---

[9] According to a study by the United States Department of Labor, Bureau of Labor Statistics, 431 taxicab drivers died from job-related injuries between 1992 and 1995. Of these fatalities, 338 were homicides. A. Knestaut, "Fatalities and Injuries Among Truck and Taxicab Drivers," 2 Compensation and Working Conditions 55, 59, table 3 (1997). "Cabdrivers had the highest homicide rate—32 homicides per 100,000—among the occupations most affected by deadly violence. This rate is four times more than that of police officers. Robbery appeared to be the motive in many cases. . . . Several factors help to explain why taxicab drivers are frequent victims of this crime: They work alone, frequently at night, and handle cash. In addition, taxicab drivers tend to work in areas, such as inner cities, with higher crime rates." Id., 55.

drivers with guns is no more serious than that posed by armed retail store operators.

Finally, I am not unaware of the hypothetical scenarios that the state threatens will result from this opinion.[10] Consistent with how this court decides cases, we cannot forecast how any particular hypothetical situation will be resolved. Any person reading the terms of § 29-35 in conjunction with this opinion, however, should appreciate that the exemption for residences and places of business would not extend to the vehicle used by *every* businessperson who must travel in the course of his or her business. The phrase "place of business" has a narrower meaning than each of its component terms. On the other hand, where it is not possible to perform the business without using the vehicle, its mobility, in and of itself, should not preclude its consideration as a "place of business."

Accordingly, I respectfully dissent.

---

[10] Equally of concern is the hypothetical scenario that could result from the limiting of § 29-35 to stationary structures. Indeed, as the defendant points out, in the absence of a fixed locale limitation in either the dwelling exception or the place of business exception, such a limitation would expose dwellers in mobile homes to criminal prosecution as well.