## STATE OF CONNECTICUT *v.* ROBERT HOPES
## (9202)

DALY, FOTI and LAVERY, Js.

Argued October 1, 1991—decision released January 14, 1992

*Alexander H. Schwartz,* for the appellant (defendant).

*Paul J. Ferencek,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Mary Reidy,* assistant state's attorney, for the appellee (state).

DALY, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of carrying a pistol without a permit in violation of General Statutes § 29-35[1] and criminal possession of a firearm in violation of General Statutes § 53a-217.[2] He was acquitted of attempt to commit first degree assault in violation of General Statutes §§ 53a-49 (a) (2) and 53a-59 (a) (1). The defendant claims (1) that the trial court improperly refused to charge the jury that duress is a defense to the charges of carrying a pistol without a permit and criminal possession of a firearm, (2) that the court incorrectly defined the meaning of carrying as used in § 29-35 when charging the jury and that there was insufficient evidence to support a conviction for carrying a pistol without a permit, and (3) that there was insufficient evidence concerning the operability of

---

[1] General Statutes § 29-35 provides in pertinent part: "(a) No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same issued as provided in section 29-28."

[2] General Statutes § 53a-217 provides: "CRIMINAL POSSESSION OF PISTOL, REVOLVER OR ELECTRONIC DEFENSE WEAPON: CLASS D FELONY. (a) A person is guilty of criminal possession of a pistol, revolver or electronic defense weapon when he possesses a pistol, revolver or electronic defense weapon and has been convicted of a capital felony, a class A felony, a class B felony, except a conviction under section 53a-86, 53a-122 or 53a-196a, a class C felony, except a conviction under section 53a-87, 53a-152, 53a-153 or 53a-196b, or a felony under sections 53a-60 to 53a-60c, inclusive, 53a-72a, 53a-72b, 53a-95, 53a-103, 53a-103a, 53a-114, 53a-136 or 53a-216. For the purposes of this section, 'convicted' means having a judgment of conviction entered by a court of competent jurisdiction.

"(b) Criminal possession of a pistol, revolver or electronic defense weapon is a class D felony, for which two years of the sentence imposed may not be suspended or reduced by the court."

the pistol he possessed to support a conviction for criminal possession of a firearm. We affirm the trial court's judgment.

The jury could reasonably have found the following facts. During the late evening hours of April 29, 1989, Eric Peck, Michael Cassar, Steve Wall, Hank Bona and Jeff Pasonti were together at Demery's nightclub in downtown New Haven. When Demery's closed at 2 a.m on April 30, Peck and his friends went to Broadway Pizza. Wall waited there for his order while the others left the restaurant to eat in Bona's car. Approximately ten minutes later, Peck returned to the crowded restaurant to look for Wall, who had already left. As Peck moved through the restaurant, he accidentally stepped on the defendant's foot. According to Peck's testimony, he apologized but the defendant responded by kicking him in the leg. They began to exchange words as Peck was going to the men's room. Upon Peck's return, the defendant stood up and challenged him to a fight. Peck was about to fight when he noticed that the defendant was accompanied by a group of people. He left the restaurant to get his friends and warned the defendant that he would return to fight.

After a few minutes, Peck returned to the restaurant with Cassar, Pasonti and Bona. As Peck and the defendant were about to fight, one of the defendant's companions told Peck, "Don't worry about him, he's acting like a jerk because he's wasted." Upon hearing this, Peck changed his mind and decided not to fight the defendant. Peck then motioned to Cassar to leave the restaurant. Peck then saw the defendant point a pistol at Cassar's head. Neither Peck nor Cassar saw where the defendant got the pistol. Thomas Jette, the manager of Broadway Pizza, testified that one of the defendant's companions gave him the pistol as Peck and Cassar were approaching. Jette described the weapon as a black handgun. While pointing the gun at

Cassar, the defendant said, "What are you going to do now, man?" Peck and Cassar fled the restaurant with their two other friends. The defendant was then seen leaving the restaurant with some of his friends.

Upon leaving the restaurant, Peck and his friends met with Wall, who was in an automobile about thirty yards from the restaurant. Less than one minute after leaving the restaurant, Peck and Cassar heard gunshots and felt something pass by their heads. Cassar felt a thrust of sand or some gravel strike his legs. They later reported this incident to the New Haven police who were unable to locate any shell casings or other evidence at the scene. Jette identified the defendant as a regular customer of Broadway Pizza. Peck and his friends all made positive photographic identifications of the defendant.

I

The defendant's first claim concerns the trial court's refusal to charge the jury on the defense of duress pursuant to General Statutes § 53a-14.[3] The following facts are pertinent to this claim.

On April 12, 1990, after the defense had rested its case, the trial court instructed both sides that closing arguments and requests to charge should be ready for the next day at 2 p.m. The court then held an in camera charging conference at which the parties presented written requests to charge the jury. On April 13, just before closing arguments were to commence, defense

[3] "[General Statutes] Sec. 53a-14. DURESS AS DEFENSE. In any prosecution for an offense, it shall be a defense that the defendant engaged in the proscribed conduct because he was coerced by the use or threatened imminent use of physical force upon him or a third person, which force or threatened force a person of reasonable firmness in his situation would have been unable to resist. The defense of duress as defined in this section shall not be available to a person who intentionally or recklessly places himself in a situation in which it is probable that he will be subjected to duress."

counsel orally requested a charge on duress. The state objected and the trial court denied the oral motion. The court noted that the defendant was given sufficient time to submit proper written requests to charge. The trial court also concluded that giving a duress instruction would be unfair to the state because the state would be unable to respond to this new theory in its closing argument. The defendant did not take an exception to this ruling. There also was no objection by the defendant to the absence of the duress instruction following the court's charge to the jury. The defendant failed to preserve the claim concerning the duress instruction by not offering a written request to charge and not taking exception to the charge given by the trial court. Practice Book § 852.[4]

The defendant seeks review of this unpreserved claim pursuant to *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), and *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). The defendant argues that the trial court's failure to give the duress instruction violated his constitutional right to present a defense. *Washington* v. *Texas,* 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967); *State* v. *Corchado,* 188 Conn. 653, 660, 453 A.2d 427 (1982). Although there is a constitutional right to present a defense, the defendant has failed to demonstrate that the absence of a duress instruction to these charges constitutes a constitutional violation that "clearly exists and clearly deprived the defendant of a fair trial . . . ." *State* v. *Golding,* supra, 240.

The defense of duress would not justify the carrying of a pistol without a permit. See *State* v. *Bailey,* 209

---

[4] Practice Book § 852 provides: "The supreme court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of objection. Upon request, opportunity shall be given to present the exception out of the hearing of the jury."

Conn. 322, 348, 551 A.2d 1206 (1988); *State* v. *Hollo-way,* 11 Conn. App. 665, 671 and n.6, 528 A.2d 1176 (1987). Claims of justification such as self-defense and duress are only relevant when the actor's use of reasonable physical force is at issue. *State* v. *Bailey,* supra. The degree of force used by a person is not relevant in a prosecution for violating § 29-35. Id. The court in *Bailey* noted that "[e]ven if the defendant's conduct in carrying the pistol was factually inseparable from a threat by [the defendant] to use force, the only legal question arising from the conduct was whether she was carrying the pistol without a permit in violation of § 29-35." Id., 348–49. Any duress this defendant may have experienced does not justify the carrying of a pistol without a permit.

As to the second count on which he was convicted concerning the criminal possession of a firearm, it is unclear whether a duress instruction was sought for that particular count. There was no specific explanation other than a general oral request that a duress instruction should be given to the jury. There also was no explanation by defense counsel for his failure to comply with Practice Book §§ 852 and 854. In the past, our Supreme Court has refused to review a defendant's claim of a court's failure to instruct on a defense where the defendant failed to comply with Practice Book §§ 852 and 854. *State* v. *Jacobs,* 194 Conn. 119, 128–29, 479 A.2d 226 (1984), cert. denied, 469 U.S. 1190, 105 S. Ct. 963, 83 L. Ed. 2d 968 (1985). In *State* v. *Jacobs,* supra, the defendant sought an instruction on the defense of intoxication but failed to file a written request to charge or to take an exception to the lack of instruction. This is exactly what occurred in this case. "When the principal participant in the trial whose function is to protect the rights of his client does not deem an issue harmful enough to press in the trial court, the appellate claim that the same issue clearly deprived the

defendant of a fundamental constitutional right . . . is seriously undercut." (Citation omitted.) *State* v. *Huff*, 10 Conn. App. 330, 338, 523 A.2d 906, cert. denied, 203 Conn. 809, 525 A.2d 523 (1987). Here, the defendant did not pursue the duress claim through an exception or a claimed factual basis or an explanation as to its application in this case. We conclude that the lack of a duress instruction for the charge of criminal possession of a firearm did not deprive the defendant of a fair trial. Thus, the defendant has failed to satisfy the *Evans-Golding* standard for review.

The lack of a duress instruction also does not constitute plain error that would warrant review pursuant to Practice Book § 4185. A party is entitled to plain error review of an unpreserved claim in "truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." *State* v. *Hinckley*, 198 Conn. 77, 87–88, 502 A.2d 388 (1985). An important factor to consider when determining if plain error review is necessary is whether the claimed error resulted in an unreliable verdict or a miscarriage of justice. *State* v. *Hinckley*, supra. The court's decision not to give a duress instruction did not affect the fundamental fairness of the trial or cause the defendant to suffer any manifest injustice.

## II

The defendant's second claim concerning the definition of "carry" within § 29-35 presents an issue of first impression. See *State* v. *Bailey*, supra, 350–51 (whether mere holding constitutes carrying within meaning of § 29-35 not in issue because jury had evidence of asportation before it). The defendant argues the meaning of "carry" in § 29-35 requires proof of asportation. Therefore, he claims that the jury should have been instructed on this element of the offense and that his

conviction cannot stand because the state failed to prove it. We do not agree that proof of asportation of the pistol or revolver is a necessary element of § 29-35.

In its charge to the jury, the trial court stated that "although it is not defined in the statute, 'carries upon his person,' is synonymous with 'to hold upon his person.' " Counsel for the defendant objected to this definition of carrying as being too broad. He argued that carrying was a narrower term than holding because in addition to holding it involved some physical movement or asportation of the pistol. The objection was overruled and there was an exception noted.

The word carry is not defined in the statute. Because carry is not defined in the statute, we will first look to determine the common meaning of carry as expressed in the law and dictionaries. *State* v. *Lubus,* 216 Conn. 402, 407, 581 A.2d 1045 (1990). The definitions of carrying a weapon support this court's decision that a showing of asportation is unnecessary. Ballentine's Law Dictionary (3d Ed.) defines carrying a weapon in part as "any method of carrying which renders the weapon readily accessible and available for use, irrespective of whether the person moves from place to place while having the weapon in possession . . . ." Black's Law Dictionary (5th Ed.) also defines carry as "[t]o bear, bear about, sustain, transport, remove, or convey." Carry is further defined as "[t]o have or bear upon or about one's person, as a watch or weapon . . . ." Id. The reference to about one's person corresponds with the first sentence of § 29-35 which uses the phrase to carry "upon his person." This confirms our conclusion that asportation or movement is not a necessary element to establish a violation of § 29-35.

When there is no explicit definition of a statutory term this court will attempt to determine it by "iden-

tifying the problem in society to which the legislature addressed itself by examining the legislative history of the statute . . . ." *State* v. *Campbell,* 180 Conn. 557, 562, 429 A.2d 960 (1980). Section 29-35 is concerned with prohibiting the use of unlicensed weapons in public. House Bill No. 5652, 24 S. Proc., Pt. 10, 1981 Sess., pp. 3150–51. Section 29-35 allows a person to keep an unlicensed pistol or revolver in her home or business location. The statute also does not prohibit the transportation of unlicensed handguns from the home or office, where the transportation involves repairing the pistol or taking part in gun competitions. Section 29-35 also specifically refers to "upon his person," thus the pistol must be within the defendant's control or dominion in a public area. On the basis of the legal definitions of carry and the statutory history as to the purpose of § 29-35, we hold that there does not have to be proof that the defendant physically moved or transported the pistol over space while carrying an unlicensed pistol.

Accordingly, the trial court's definition of carry was a correct statement of law. Similarly, because proof of asportation is not required to prove a violation of § 29-35, there was sufficient evidence to support the defendant's conviction. The fact that the defendant had the pistol within his possession and control in a public place without having a valid permit justifies his conviction pursuant to § 29-35.

### III

The defendant's remaining claim concerns the sufficiency of the evidence as to the operability of the pistol as required by § 53a-217. The defendant argues that although he had the pistol inside the restaurant, there is no evidence linking him to the subsequent shooting at Peck and Cassar that occurred outside the restaurant.

When reviewing a sufficiency of the evidence claim, we examine the evidence in the light most favorable to upholding the jury's verdict. *State* v. *Avis,* 209 Conn. 290, 309, 551 A.2d 26 (1988), cert. denied, 489 U.S. 1097, 109 S. Ct. 1570, 103 L. Ed. 2d 937 (1989); *State* v. *Rice,* 25 Conn. App. 646, 650, 595 A.2d 947 (1991). We then determine on the basis of facts established and the reasonable inferences whether the " 'jury could reasonably have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt.' " *State* v. *Famiglietti,* 219 Conn. 605, 609, 595 A.2d 306 (1991). It should also be emphasized that " ' "[i]n this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct.". . .' " (Citation omitted.) *State* v. *Robinson,* 213 Conn. 243, 254, 567 A.2d 1173 (1989).

The operability of a pistol or firearm can be proved by either direct or circumstantial evidence. *State* v. *Manley,* 195 Conn. 567, 573–74 n.8, 489 A.2d 1024 (1985). The proof of operability does not require that the actual pistol be admitted into evidence. Id. In this case, the evidence revealed that after the defendant pulled out the pistol and pointed it at Cassar and Peck, they retreated from the restaurant. According to defense witness Joshua Jacobs, the defendant then followed them out of the restaurant less than one minute after they had departed. There was no direct evidence as to the location of the pistol, once Peck and Cassar retreated after the defendant brandished the pistol. None of the state's witnesses saw the defendant leave with the gun or fire a pistol outside the restaurant. As Peck and Cassar stood in front of Wall's car, approximately twenty-five yards away from the restaurant, they heard gunfire. They also felt something pass close by their heads. Cassar testified that he felt debris or

gravel hit his legs. The jury could infer that the pistol was operable from the testimony of both Peck and Cassar who heard gunshots and felt something pass by them outside of the restaurant. The failure to recover the pistol or shell casings does not prevent establishing proof of operability.

The defendant, relying on *State* v. *Osman,* 218 Conn. 432, 437, 589 A.2d 1227 (1991), argues that for the jury to have connected the gunfire that occurred outside the restaurant to the pistol held by the defendant while inside the restaurant required a leap of faith not founded in the evidence. There was evidence that the defendant initially pointed the weapon at Peck and Cassar in the restaurant. Within one minute, the defendant then followed Peck and Cassar outside the restaurant. Just after Peck and Cassar left the restaurant they heard the gunfire and felt something pass by their heads. The jury could reasonably conclude from the circumstantial evidence that the defendant followed Peck and Cassar and fired the pistol at them even though there was no direct evidence linking the defendant to the discharge of the pistol. The jury did not have to make an unjustified leap of faith to find that the defendant was responsible for firing the pistol at Peck and Cassar.

We conclude that a jury could reasonably find that the pistol used by the defendant in this case was operable as required by § 53a-217.

The judgment is affirmed.

In this opinion FOTI, J., concurred.

LAVERY, J., dissenting. I cannot adopt the majority's view that the defendant was not entitled to a jury charge on duress. I, therefore, respectfully dissent.

The majority cites *State* v. *Bailey,* 209 Conn. 322, 551 A.2d 1206 (1988), as authority for the proposition that the defense of duress would not justify the carrying of a pistol without a permit in violation of General Statutes § 29-35. In *Bailey,* our Supreme Court concluded that "the defendant was not entitled to a self-defense instruction under § 53a-19 to the charge of carrying a pistol without a permit." Id., 349. This case is distinguishable from *State* v. *Bailey,* supra. In this case, the defendant requested a duress instruction under § 53a-14, whereas the defendant in *Bailey* did not.

"Because § 53a-14 declares that duress 'shall be a defense' and not an affirmative defense, we look to § 53a-12 to determine the allocation of the burden of proof. Section 53a-12 (a) provides that '[w]hen a defense other than an affirmative defense, is raised at trial, the state shall have the burden of disproving such defense beyond a reasonable doubt.' Whether the defense of duress was 'raised' at the trial must be determined by viewing the record in a light most favorable to the defendant's claim." *State* v. *Rouleau,* 204 Conn. 240, 249–50, 528 A.2d 343 (1987).

Viewing the record in a light most favorable to the defendant's claim, I find that he did, in fact, raise the defense of duress against the charges of carrying a pistol without a permit and criminal possession of a firearm. The defendant orally requested an instruction on duress on the day after the charging conference. The trial court denied the oral motion, because the defendant failed to present a written request to charge on the defense of duress in compliance with Practice Book § 852, and because the state would be unfairly precluded from adequately responding to the duress instruction during its closing argument. Although the defendant's request to charge was not in strict compliance with the rules of practice, his oral motion was sufficient to raise the

defense. We must next determine whether the defendant introduced sufficient evidence at trial to warrant the duress instruction.

It is recognized as a matter of federal and Connecticut constitutional law that in criminal trials due process requires the jury to be instructed on a defense when evidence of such a defense has been introduced. See, e.g., *Washington* v. *Texas,* 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967); *State* v. *Belle,* 215 Conn. 257, 273, 576 A.2d 139 (1990); *State* v. *Bethea,* 167 Conn. 80, 83, 355 A.2d 6 (1974). In Connecticut, the evidentiary threshold entitling a defendant to a defense instruction is very low. Our Supreme Court has held that if a defendant asserts a recognized legal defense and the evidence indicates the availability of that defense, a jury charge is obligatory and a " 'defendant is "entitled to have instructions presented relating to any theory of defense for which there is any foundation in the evidence, no matter how weak or incredible . . . ." *United States* v. *Platt,* 435 F.2d 789, 792 (2d Cir. 1970), quoting *United States* v. *O'Connor,* 237 F.2d 466, 474 n.8 (2d Cir. 1956).' " *State* v. *Fuller,* 199 Conn. 273, 278, 506 A.2d 556 (1986). It is well settled that when considering a claim of failure to deliver a requested charge, we must view the evidence in the light most favorable to the defendant. *State* v. *Diggs,* 219 Conn. 295, 298, 592 A.2d 949 (1991); *State* v. *Fuller,* supra, 275.

Applying this standard to the facts introduced in this case, I cannot avoid the conclusion that there was a sufficient factual foundation placed before the jury to support an instruction on duress. The incident began when Peck stepped on the defendant's foot in the restaurant. The defendant kicked Peck and a heated verbal exchange followed. Peck then left the restaurant to get some friends. Less than a minute later, Peck returned with two friends. Peck was an offensive tackle

on a college football team, and described himself as six feet two inches tall and weighing approximately 270 pounds. His two friends were also physically imposing, each tall and weighing between 200 and 240 pounds. The three rushed to the rear of the restaurant. The defendant was cornered in front of a jukebox. The defendant did not bring the pistol into the restaurant; it was tossed to him by another patron after the defendant had retreated as far as he could. Peck did not stop rushing toward the defendant until the defendant pointed the pistol at him.

In my opinion, the testimony and evidence outlined above provided an ample basis to entitle the defendant to a jury instruction of duress on the charges of carrying a pistol without a permit and criminal possession of a firearm.

I would reverse the judgment and remand the case for a new trial with instructions to instruct on the defense of duress.