## STATE OF CONNECTICUT *v.* JIMMY WILLIAMS
### (AC 18637)

Lavery, C. J., and Spear and Dupont, Js.

Argued March 29—officially released August 29, 2000

*Cameron Dorman*, special public defender, for the appellant (defendant).

*Susan C. Marks*, supervisory assistant state's attorney, with whom, on the brief, was *Michael Dearington*, state's attorney, for the appellee (state).

*Opinion*

SPEAR, J. The defendant, Jimmy Williams, appeals from the judgment of conviction, rendered after a jury trial, of two counts of carrying a pistol without a permit

in violation of General Statutes § 29-35 (a).[1] The defendant claims that his convictions violate his state and federal constitutional rights to be free from double jeopardy because the uninterrupted act of carrying a pistol without a permit on different days is a single continuing offense, and, consequently, multiple punishments are prohibited. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On October 16, 1996, the defendant and a friend, Ramone Vasquez, were riding their bicycles in the Fair Haven area of New Haven near Ferry Street. Later in the day, the defendant was riding alone on Ferry Street when he heard someone call, "Vasquez." The defendant turned to see who had called the name and saw the victim, Carmello Amodovar, and the victim's friend, Roberto Santiago, who were both members of a street gang. The victim pointed at the defendant and told Santiago that the defendant had insulted his girlfriend. Upon hearing about the insult, Santiago asked the defendant to approach him. The defendant did so, and Santiago told him that the victim wanted to engage in a one-on-one fight.

Subsequently, four other gang members arrived at the scene, pushed the defendant from his bicycle and began hitting him. The victim joined in on the attack and, during the altercation, the defendant's sweatshirt was pulled upward, exposing a gun in his waistband. One of the attackers yelled "gun," and all of the gang members ran away except the victim and Santiago. During the struggle, the victim and Santiago tried to get the gun from the defendant. The victim was shot in the abdomen and, subsequently, died.

---

[1] General Statutes § 29-35 (a) provides in relevant part: "No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same issued as provided in section 29-28. . . ."

After the shooting, the defendant took the gun and fled. He stayed with a cousin until October 20, 1996, and, thereafter, he stayed at a friend's house on Alton Street. On October 21, 1996, a police officer assigned to investigate the shooting went to interview a witness at 19 Alton Street. While the officer was at the rear door of the residence, the defendant left through a back window and crossed into the adjoining yard. The officer called for the defendant to stop and he did so. The officer then patted down the defendant and found a .40 caliber handgun in the front waistband of his pants that matched a .40 caliber shell casing that the police had found at the scene of the October 16, 1996 shooting. The defendant did not have a permit to carry the handgun. Subsequent forensic testing established that the shell casing found at the scene of the shooting had been fired from the same weapon that had been found on the defendant.

The defendant was charged with one count of murder in violation of General Statutes § 53a-54a (a) and two counts of carrying a pistol without a permit in violation of § 29-35 (a). He was acquitted of the murder charge and found guilty of the two counts of carrying a pistol without a permit. He received a sentence of five years imprisonment, execution suspended after four years, followed by two years probation on each count, to be served concurrently. This appeal followed.

The defendant claims that the uninterrupted act of carrying a pistol without a permit on different days is a single continuing offense, and, therefore, the multiple punishments imposed here violate the state and federal constitutional protections against double jeopardy. Thus, he claims that one of his convictions must be vacated. We disagree.

"The double jeopardy clause of the fifth amendment to the United States constitution provides that no per-

son shall 'be subject for the same offense to be twice put in jeopardy of life or limb . . . .' " *State* v. *Hickam*, 235 Conn. 614, 617, 668 A.2d 1321 (1995), cert. denied, 517 U.S. 1221, 116 S. Ct. 1851, 134 L. Ed. 2d 951 (1996). This constitutional guarantee is applicable to the states through the fourteenth amendment to the United States constitution. *Benton* v. *Maryland*, 395 U.S. 784, 793–96, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). Although the Connecticut constitution has no specific double jeopardy provision, the "prohibition on double jeopardy is implied through the due process provisions of article first, §§ 8 and 9," and is coextensive with that of the federal constitution. *State* v. *Laws*, 37 Conn. App. 276, 292, 655 A.2d 1131, cert. denied, 234 Conn. 907, 659 A.2d 1210 (1995).

"The double jeopardy clause protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense." *State* v. *Hickam*, supra, 235 Conn. 617–18. The defendant's claim invokes that aspect of double jeopardy that prohibits multiple punishments for a conviction of a single offense. "Double jeopardy analysis in the context of a single trial is a two-step process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met." (Internal quotation marks omitted.) *State* v. *Glover*, 40 Conn. App. 387, 391, 671 A.2d 384, cert. denied, 236 Conn. 918, 673 A.2d 1145 (1996).[2]

"In deciding whether the crimes arose out of the same act or transaction, we analyze the language of the

---

[2] Although *Glover* deals with the question of whether a person can be convicted of two distinct offenses for the same conduct, the double jeopardy inquiry is the same.

information." *State* v. *Nita,* 27 Conn. App. 103, 113, 604 A.2d 1322, cert. denied, 222 Conn. 903, 606 A.2d 1329, cert. denied, 506 U.S. 844, 113 S. Ct. 133, 121 L. Ed. 2d 86 (1992). The substitute information here alleged that the defendant unlawfully carried a pistol on October 16, 1996, at or near 187 Ferry Street and on October 21, 1996, at or near 19 Alton Street. The prohibited acts of carrying a pistol without a permit, on two different dates, at different locations, constitute separate acts or transactions. We conclude that the crimes here are separate and distinct and did not arise out of the same act or transaction.

We are not persuaded by the defendant's argument that the two violations of § 29-35 (a) for which he was convicted were not separate acts, but rather part of the same transaction as a continuing course of conduct. The defendant claims in his brief that "[w]here a statute is defined in terms of dominion or control, the offense is continuous in nature." Thus, he claims that because the word "carry" in § 29-35 (a) is synonymous with "possession," the legislature did not intend multiple punishments for the continuous carrying of a pistol.

The key to determining whether the continuing offense doctrine applies is legislative intent. Our Supreme Court has explained that " '[t]he proper double jeopardy inquiry when a defendant is convicted of multiple violations of the same statutory provision is whether the legislature intended to punish the individual acts separately or to punish only the course of action which they constitute.' *Albernaz* v. *United States,* 450 U.S. 333, 337, 101 S. Ct. 1137, 67 L. Ed. 2d 275 (1981) . . . ." (Citations omitted.) *State* v. *Freeney,* 228 Conn. 582, 587–88, 637 A.2d 1088 (1994).

In *State* v. *Hopes,* 26 Conn. App. 367, 374–75, 602 A.2d 23, cert. denied, 221 Conn. 915, 603 A.2d 405 (1992), this court noted that the word carry is not defined in

§ 29-35 and that "[w]hen there is no explicit definition of a statutory term this court will attempt to determine it by identifying the problem in society to which the legislature addressed itself by examining the legislative history of the statute . . . ." (Internal quotation marks omitted.) We then concluded that the problem in society that the legislature sought to address by enacting § 29-35 is the "use of unlicensed weapons in public." Id., 375, citing House Bill No. 5652, 24 S. Proc., Pt. 10, 1981 Sess., pp. 3150–51. As we noted in *Hopes*, the statute "allows a person to keep an unlicensed pistol or revolver in her home or business location." Id. The statute, however, prohibits a person from carrying a pistol or revolver on one's person outside the home or business without having a valid permit.

The legislature clearly did not intend that proof that a person had carried a pistol without a permit on one occasion would immunize that person from punishment for carrying the same pistol on another, later occasion. Moreover, carrying and possession are different concepts, that is, a person can possess an item without carrying it on his person. The statute is designed to prohibit the carrying of a pistol without a permit and not the possession of one. We conclude that the legislature intended to create discrete offenses for which multiple punishments may be imposed.

The judgment is affirmed.

In this opinion the other judges concurred.