*Williams v. Barr*

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2019

(Submitted: March 27, 2020    Decided: May 27, 2020)

Docket No. 18-2535

ROBERT JUNIOR WILLIAMS,

*Petitioner,*

–v.–

WILLIAM P. BARR, UNITED STATES ATTORNEY GENERAL,

*Respondent.*

B e f o r e :

JACOBS, CARNEY, and BIANCO, *Circuit Judges.*

Robert Junior Williams petitions for review of a 2018 Board of Immigration Appeals ("BIA") decision ordering him removed based on his 2016 Connecticut state conviction for carrying a pistol or revolver without a permit, in violation of Connecticut General Statutes § 29-35(a). The BIA rejected Williams's argument that section 29-35(a) criminalizes conduct that is not a "firearms offense" under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(C), and that section 29-35(a) is therefore not a removable offense. Williams's argument turns on a comparison of the "antique firearms" transportation exception of section 29-35(a) and the general exception for

"antique firearms" found in the definition of an INA "firearms offense." We conclude that the BIA erred in ruling that the exceptions are of equivalent reach and that the state statute is a categorical match to the federal statute. Furthermore, because our conclusion is determined by the text of the relevant statutes, the "realistic probability" test does not apply here, contrary to the BIA's alternative holding. *See Hylton v. Sessions*, 897 F.3d 57, 63 (2d Cir. 2018). The petition for review is GRANTED. The order of removal is VACATED, and the cause is REMANDED to the BIA with directions to terminate Williams's removal proceedings.

GRANTED, VACATED, AND REMANDED.

Judge Jacobs concurs in a separate opinion.

────────────

Elyssa N. Williams, The Bronx Defenders, Bronx, NY, *for Robert Junior Williams*.

Patricia E. Bruckner, Trial Attorney; Sabatino F. Leo, Senior Litigation Counsel; Joseph H. Hunt, Assistant Attorney General, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, DC, *for William P. Barr, United States Attorney General*.

────────────

CARNEY, *Circuit Judge*:

Robert Junior Williams petitions for review of a Board of Immigration Appeals ("BIA") decision subjecting him to removal from the United States on the basis of his 2016 conviction for unpermitted carrying of a pistol or revolver in violation of Connecticut General Statutes § 29-35(a). Affirming the decision of an Immigration Judge ("IJ"), the BIA rejected Williams's assertion that section 29-35(a) criminalizes more conduct than is described by the Immigration and Nationality Act ("INA") as a "firearms offense" in 8 U.S.C. § 1227(a)(2)(C), and that it therefore cannot serve as a basis for removal. *In re Robert Junior Williams*, No. A055 568 293 (B.I.A. Aug. 2, 2018),

2

*aff'g* No. A055 568 293 (Immig. Ct. Hartford Feb. 13, 2018). The agency ruled in the alternative that, even if the state statute is broader, Williams's petition still fails because he did not demonstrate a "realistic probability" under *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007), that the state would apply its law to conduct beyond that covered by the federal law. On appeal, Williams challenges these determinations, reprising his legal arguments before the BIA.

As a matter of first impression, we address the comparative scope of the relevant state and federal statutes. We conclude on *de novo* review that the Connecticut statute criminalizes conduct involving "antique firearms" that the INA firearms offense definition does not, precluding Williams's removal on the basis of the state conviction. We further decide that, under *Hylton v. Sessions*, 897 F.3d 58 (2d Cir. 2018), the realistic probability test has no bearing here, where the text of the state statute gives it a broader reach than the federal definition. Accordingly, we GRANT the petition for review. We VACATE the order of removal and REMAND the cause to the agency with directions to terminate Williams's removal proceedings.

## BACKGROUND

The relevant facts are undisputed and as stated here are drawn from the Certified Administrative Record ("CAR") on appeal.

### 1. *Factual and procedural setting*

Robert Junior Williams, a native and citizen of Jamaica born in 1989, was admitted to the United States in 2005 as a lawful permanent resident. In 2016, Williams pled guilty under the *Alford* doctrine, *see North Carolina v. Alford*, 400 U.S. 25, 37 (1970), and was convicted in Bridgeport, Connecticut, of carrying a pistol or revolver without a permit (in violation of Connecticut General Statutes § 29-35(a)) and of carrying a dangerous weapon (in violation of Connecticut General Statutes § 53-206). He received

3

a sentence of five years' imprisonment, to be suspended after one year's incarceration, with a conditional discharge of five years.

Based on his conviction under section 29-35(a), the Department of Homeland Security charged Williams in 2017 as removable under the INA for having been convicted of a "firearms offense" as defined by 8 U.S.C. § 1227(a)(2)(C). Williams moved to terminate his removal proceedings, arguing that his Connecticut conviction under section 29-35(a) did not qualify as an INA firearms offense under section 1227(a)(2)(C) because of the mismatch of their respective exceptions for conduct involving antique firearms. In February 2018, the IJ denied the motion, and in August of that year, the BIA affirmed the IJ's decision. The BIA concluded that the statutes were a categorical match, making Williams removable. The BIA further decided in the alternative that Williams's petition should be denied because he had failed to show a "realistic probability" that the state would prosecute conduct involving antique firearms that the federal statute did not cover. CAR at 4. Williams timely petitioned for review.

### 2. "Certain firearms offenses" under the INA

An alien convicted of any of a list of criminal offenses set out in the INA is subject to removal. *See* 8 U.S.C. § 1227(a). The list includes "certain firearm offenses," as described in section 1227(a)(2)(C). That section reads as follows:

> Any alien who at any time after admission is convicted under any law of purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying, or of attempting or conspiring to purchase, sell, offer for sale, exchange, use, own, possess, or carry, any weapon, part, or accessory *which is a firearm* or destructive device (as defined in section 921(a) of Title 18) in violation of any law is deportable.

*Id.* § 1227(a)(2)(C) (emphasis added). The definition of "firearm" is set out in section 921(a)(3) of title 18:

4

> The term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. *Such term does not include an antique firearm.*

18 U.S.C. § 921(a)(3) (emphasis added). The INA "firearm offense" thus contains a blanket exclusion for conduct involving "antique firearms." The term "antique firearm" also finds its definition in title 18: as relevant here, it means "any firearm (including any firearm with a matchlock, flintlock, percussion cap, or similar type of ignition system) manufactured in or before 1898." *Id.* § 921(a)(16)(A). The designation of a firearm as "antique" does not mean that the firearm is inoperable.

### 3. *The Connecticut statute: Connecticut General Statutes § 29-35(a)*

Section 29-35(a) of the Connecticut General Statutes generally prohibits the "carry[ing]" of a pistol or revolver in public without a permit. Its primary prohibition reads, "No person shall *carry* any pistol or revolver upon his or her person, except when such person is within the dwelling house or place of business of such person, without a permit to carry the same . . . ." Conn. Gen. Stat. § 29-35(a) (emphasis added). Another section in the same chapter instructs that the terms "pistol" and "revolver" as used in section 29-35 "mean any firearm having a barrel less than twelve inches in length." *Id.* § 29-27. Neither section (nor any other that we have been directed to) further defines the term "carry[ing]" as used in the primary prohibition.

In addition to stating the general prohibition, section 29-35(a) establishes several exceptions. One is key to Williams's argument here. It reads: "The provisions of this subsection shall not apply to . . . any person *transporting* an antique pistol or revolver

. . . ." *Id.* § 29-35(a) (emphasis added).[1] The section explains "transporting" as follows, distinguishing between "transporting" generally and "transporting" by motor vehicle:

> For the purposes of this subsection, . . . "transporting a pistol or revolver" means transporting a pistol or revolver that is unloaded and, if such pistol or revolver is being transported in a motor vehicle, is not readily accessible or directly accessible from the passenger compartment of the vehicle or, if such pistol or revolver is being transported in a motor vehicle that does not have a compartment separate from the passenger compartment, such pistol or revolver shall be contained in a locked container other than the glove compartment or console.

*Id.* The complete text of section 29-35 is set out in an Appendix to this opinion, for the convenience of the reader.

## DISCUSSION

Our jurisdiction to review a final order of removal concerning an alien who has allegedly committed an INA firearms offense is limited to "constitutional claims or questions of law." 8 U.S.C. §§ 1252(a)(2)(C), (D); 1227(a)(2)(C). Whether a state statute of conviction is a categorical match to the ground of removability asserted by the agency is a question of law, which we review *de novo*. *See Pierre v. Holder*, 588 F.3d 767, 772 (2d Cir. 2009).

To determine whether a state conviction is a removable offense as included on the INA's list, we employ the "categorical approach," in which we "look not to the facts of the particular prior case, but instead to whether the state statute defining the crime of

---

[1] The definition of "antique pistol or revolver" used by Connecticut law in section 29-35(a) is essentially identical to that relied on by the INA and set forth in 18 U.S.C. § 921(a)(16), quoted above. *See* Conn. Gen. Stat. § 29-33(f) (providing, "An antique pistol or revolver, for the purposes of this section, means any pistol or revolver which was manufactured in or before 1898 and any replica of such pistol or revolver [subject to certain limitations]."). Neither party urges otherwise.

6

conviction categorically fits within the generic federal definition." *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013) (internal quotation marks omitted). A state offense makes a categorical match with a generic federal offense "only if a conviction of the state offense *necessarily* involved facts equating to the generic federal offense." *Id.* (emphasis added) (alterations and internal quotation marks omitted). If the state statute criminalizes conduct that the federal offense does not, the two are not categorical matches and a conviction under the state statute cannot serve as a predicate for removal under the INA. As we have regularly observed in applying this approach, "only the minimum criminal conduct necessary to sustain a conviction under a given statute is relevant" to our analysis. *Pascual v. Holder*, 707 F.3d 403, 405 (2d Cir. 2013) (internal quotation marks omitted).

## I. Comparison of the federal and state statutes

The central question before us is whether the "firearms offense" defined in the INA, as codified in section 1227(a)(2)(C), and the Connecticut offense set out in section 29-35(a), concerning the public carrying of pistols and revolvers without a permit, are categorical matches. The answer to that question, in turn, depends on whether the statutes' respective exceptions for use of antique firearms under federal and state law are coextensive. We turn to that question now.

### A. Loaded and unloaded firearms

We first examine the most glaring distinction between the two statutes: their treatment of conduct related to antique firearms that are loaded. Connecticut criminalizes unlicensed carrying and transportation of loaded antique firearms; the federal definition excludes such conduct. The Connecticut exception for "transporting" antique pistols and revolvers by its terms applies only to "unloaded" pistols and revolvers. Conn. Gen. Stat. § 29-35(a) ("'transporting a pistol or revolver' means

transporting a pistol or revolver that is unloaded"). In contrast, section 921(a)(3) of title 18, whose definition of "firearm" the INA adopts, provides without reference to whether the firearm is loaded that "[t]he term 'firearm' . . . does not include an antique firearm." The state prohibition and INA offense definition therefore do not match. In its decision, the BIA failed to make any mention of this distinction. The textual difference is fatal, however, to its decision that Williams's Connecticut conviction is a removable offense.

While we need not go further to find that the state statute is not a categorical match, we do so only to confirm our reading.

B.    "Carrying" and "transporting"

In its written opinion, the BIA focused on what in its view was the absence of a meaningful distinction between "carrying" and "transporting." Even considering this aspect of the statute alone, however, we would hold that the state statute is categorically broader than the federal definition.

The BIA read the state's explicit exception for "transportation" of (unloaded) antique pistols or revolvers as establishing that "carrying" an antique pistol or revolver, too, was fully exempt from the statute's general prohibition. The BIA found the distinction urged by Williams between "carrying" and "transporting" antique firearms to be "exceedingly implausible," stating that "the respondent's distinction between 'transportation' and 'carrying' makes no practical sense in this context," because "it is evident that one who 'transports' an antique pistol must also 'carry' it." CAR at 3–4. It reasoned that the exception for transporting antique firearms must be read as also exempting "carrying" such firearms: the statute may not be understood as "extending an 'antique' exception to one who moves about while carrying a pistol or revolver without a permit, yet as denying the exception to one who commits the lesser act of

8

standing still while doing so." *Id.* at 4 (emphases omitted). We think the BIA dismissed the statute's distinction between "carrying" and "transporting" too quickly, without giving due deference to the Connecticut legislature's intentions.

*Textual analysis.* As described above, the text of the Connecticut statute excludes only the "transporting" of "unloaded" antique pistols or revolvers from its general prohibition on "carrying" unpermitted pistols and revolvers "upon [one's] person." Conn. Gen. Stat. § 29-35(a). The INA definition of "firearm offense," in contrast, expressly excludes all conduct involving antique firearms.

Although the state statute is not a paragon of clarity, the BIA misconstrued the statute and misunderstood Williams's argument. First, we cannot overlook the legislature's wording choices so readily. *See United States v. Mason*, 692 F.3d 178, 182 (2d Cir. 2012) ("[T]he use of different words within the same statutory context strongly suggests that different meanings were intended." (internal quotation marks omitted)). The legislature differentiated "carrying" from "transporting": although we will leave a definitive construction of section 29-35(a) to the Connecticut courts, the statute's framing convinces us that the legislature intended "carrying" to encompass a broader range of activity than "transporting."

The six "transporting" exceptions to the carrying prohibition focus on moving firearms from one place to another for a designated purpose. This is suggested not only by the differential word choice, but the structure of the subsection—moving from a broad general prohibition on unpermitted public "carrying," through specific exceptions for classes of people who are discharging their public duties, and then to exceptions for "transporting" that address movement for specific purposes done under specific conditions, and, presumably, that were designed to address specific needs and risks.

9

Thus, the first sentence of the statute states the general prohibition for the "carrying" on one's person, and outside of one's home or place of business, of unpermitted pistols and revolvers. Conn. Gen. Stat. § 29-35(a). Then, the statute exempts from the prohibition several classes of people: "parole officer[s] or peace officer[s]," federal law enforcement officials, and members of the armed forces, if "carrying" a pistol or revolver in circumstances related to their public safety roles. *Id.*

Only then does the statute delineate several exceptions related to the "transportation" of such firearms: in approximate terms, its exempts their "transportation" (1) as "merchandise"; (2) to a residence or place of business after purchase, as "originally wrapped at the time of sale" at a store; (3) for repair purposes; (4) for "competitions" or training purposes; and (5) for certain authorized testing purposes. *Id.*; *see also State v. Lutters*, 270 Conn. 198, 210, 853 A.2d 434, 441 (Conn. 2004) ("[T]he legislature has placed severe restrictions on the manner in which an unlicensed handgun may be transported in accordance with . . . one of . . . six . . . exceptions."). The last of the six listed "transportation" exceptions refers to the transporting of an antique firearm. Thus, in prosecuting a violation of the unlicensed "carry" prohibition, the exceptions are in the nature of a defense: that the firearm was being moved outside the home or place of business for a particular authorized purpose and in a particular authorized fashion. These give us additional reasons to disagree with the BIA's conclusion that the statute implies that Connecticut law generally allows "carrying" an antique firearm without a license.

*Connecticut case law.* This construction, differentiating between "carrying" and "transporting," finds support in Connecticut case law. In 1992, the Connecticut Appellate Court affirmed the use of a jury instruction interpreting section 29-35. In doing so, the state court distinguished between "carrying" and "transporting." It held that, to prove an illegal "carry[ing]" of a pistol or revolver, "there does not have to be

proof that the defendant physically moved or transported the pistol over space while carrying an unlicensed pistol." *State v. Hopes*, 26 Conn. App. 367, 375, 602 A.2d 23, 27 (Conn. App. Ct. 1992).[2]

More recently, Connecticut appellate courts have agreed, citing *Hopes* for the proposition that unlawful "carrying" under section 29-35(a) does not necessitate any kind of transport, and thereby confirming that "carrying" under section 29-35(a) should be read as describing a broader range of conduct. *See State v. Crespo*, 145 Conn. App. 547, 573–74, 76 A.3d 664, 683 (Conn. App. Ct. 2013) ("Because there is . . . no requirement that the pistol or revolver be moved from one place to another to prove that it was carried, a defendant can be shown to have carried a pistol or revolver upon his person . . . [if he] bore it upon his body for any period of time while maintaining dominion or control over it." (citation omitted)), *aff'd*, 115 A.3d 447 (Conn. 2015); *State v. Slade*, 97 Conn. App. 404, 412–13, 905 A.2d 689, 695 (Conn. App. Ct. 2006) ("Because § 29-35(a) does not require proof that the defendant physically moved or transported the revolver[,] the inferences tending to demonstrate that the defendant cocked the revolver in the vehicle would show that the defendant carried the revolver in contravention of § 29-35(a)." (citation omitted)). The Connecticut case law thus reinforces the conclusion drawn from the text that a defendant may be prosecuted for "carrying" an unloaded firearm on his person in public without being shown to be "transporting" it from one location to another, and therefore that a person may "carry"

---

[2] In its discussion, the *Hopes* court used the term "asportation" apparently as interchangeable with the term "transportation." *Hopes*, 26 Conn. App. at 375, 602 A.2d at 27 ("[A]sportation is not required to prove a violation of § 29-35 . . . ."). Black's Law Dictionary defines "asportation" as "[t]he act of carrying away or removing (property or a person),"and advises that it is "a necessary element of larceny." Black's Law Dictionary (11th ed. 2019). The *Hopes* court did not dwell on the distinction, however, instead stressing only that proof that the defendant "moved or transported" the pistol or revolver is not required. *Hopes*, 26 Conn. App. at 375, 602 A.2d at 27.

an unloaded antique firearm unlawfully, notwithstanding the "transportation" exception.

The Connecticut Supreme Court appears to endorse this restricted view of the exception as well. In a 2004 decision, it described the statute's listed exceptions for "transporting" as "narrowly circumscribed," reinforcing our conclusion that the exception for "transporting an antique pistol or revolver" should not be read to swallow the generic prohibition. *Lutters*, 270 Conn. at 210, 853 A.2d at 441 (internal quotation marks omitted). In *Lutters*, that court wrote:

> These six limited ["transporting"] exceptions to § 29–35's general prohibition of the possession of a handgun without a permit outside of a dwelling house or place of business represent the legislature's recognition that, on occasion, it may be necessary to transport an unlicensed handgun from a dwelling house or place of business to another location for a specific and limited purpose, including, for example, the repair of the handgun. The narrowly circumscribed nature of these exceptions, however, is indicative of the overriding purpose of § 29–35(a), namely, to curtail the possession of unlicensed handguns in the public arena.

*Id.* The court distinguished "the possession of unlicensed handguns in the public arena," *i.e.*, the "carrying" of pistols or revolvers ("handguns"), on the one hand, from the act of "transport[ing] an unlicensed handgun from a dwelling house or place of business to another location." *Id.*

*1999 revision of the Connecticut statute.* Finally, the particulars of a significant overhaul of section 29-35(a) made by the Connecticut General Assembly in 1999 also confirm our reading of the text. Before 1999, the statute—then much abbreviated in many respects—included a general exception to its prohibition on unpermitted carrying in public for persons "carrying" an antique pistol or revolver, and (like the current

12

federal statute) placed no limitations on that exception with regard to transporting or other conduct.[3]

In 1999, however, the General Assembly revamped the statute. It replaced "carrying" with "transporting" in its statement of the antique firearm exception and added the limiting definition of "transporting"—restricting it to *unloaded* firearms—that we have focused on and that has led to some confusion. 1999 Conn. Legis. Serv. P.A. 99-212 (S.S.B. 1166). The 1999 law also changed "carrying" to "transporting" for the five other "transportation" exceptions that the *Lutters* court recognized and called "narrowly circumscribed." *Lutters*, 270 Conn. at 210, 853 A.2d at 441. The 1999 amendment thus strongly suggests that the legislature intended to jettison the prior blanket exception for carrying antique pistols or revolvers in favor of a narrower version.

The suggestion is further strengthened by the state legislature's enactment, in the same overhaul bill, of a provision codified at section 29-33 regarding the "Sale, delivery or transfer of pistols and revolvers." That section disallows, among other acts, the transfer of pistols or revolvers to certain classes of persons, such as felons. *See generally* Conn. Gen. Stat. § 29-33; 1999 Conn. Legis. Serv. P.A. 99-212 (S.S.B. 1166). Subsection (f) of that statute (as codified) expressly establishes a blanket exception for such transactions insofar as they would otherwise apply to antiques: "The provisions of this section shall not apply to antique pistols or revolvers." Conn. Gen. Stat. § 29-33(f).

The 1999 enactment thus demonstrates a legislative intent to differentiate between that conduct (sale, delivery, and transfer of pistols and revolvers) as to which it

---

[3] Before the 1999 amendment, the statute provided that it did not apply to "any person carrying an antique pistol or revolver, as defined in section 29-33." 1988 Conn. Legis. Serv. P.A. 88-128, § 1.

allowed a wholesale exception with respect to antique firearms, and that conduct as to which it did not ("carrying" unpermitted pistols and revolvers). In short, the Connecticut General Assembly took a deliberate step in 1999 when it declined to adopt in section 29-35(a) an across-the-board "carry" exception for antique pistols and revolvers. We need not adopt precise definitions of the terms to conclude that the word "carrying" as used in the Connecticut law encompasses a larger range of conduct than does "transporting."

C.     <u>Additional requirements for transportation by motor vehicle</u>

The Connecticut statute also imposes locational requirements that must be met for the exception regarding "transporting" pistols or revolvers in a motor vehicle to apply. At the threshold, as discussed above, the statute's several exceptions for "transporting a pistol or revolver" do not reach conduct involving loaded pistols or revolvers, whether antique or otherwise: as the section instructs, "'transporting a pistol or revolver' means transporting a pistol or revolver *that is unloaded*." Conn. Gen. Stat. § 29-35(a) (emphasis added). But in addition, the statute imposes other, independent requirements (such as where in the vehicle the firearm must be placed) if the unpermitted firearm is being "transported" in a motor vehicle:

> "transporting a pistol or revolver" means transporting a pistol or revolver that is unloaded and, if such pistol or revolver is being transported in a motor vehicle, is not readily accessible or directly accessible from the passenger compartment of the vehicle or, if such pistol or revolver is being transported in a motor vehicle that does not have a compartment separate from the passenger compartment, such pistol or revolver shall be contained in a locked container other than the glove compartment or console.

14

*Id.* If those conditions are not met, the transportation is not exempt; rather, it amounts to unpermitted carrying—including of an unloaded antique pistol or revolver—and may be subject to prosecution.

*       *       *

In sum, section 29-35(a) generally criminalizes "carrying" an antique pistol or revolver without a permit. It criminalizes all conduct involving a loaded antique pistol or revolver. It criminalizes "transporting" antique pistols or revolvers that are unloaded but not kept properly in a motor vehicle. Unlike the INA, Connecticut's law does not provide a general exception for conduct involving antique firearms. Connecticut General Statutes section 29-35(a) is thus not a categorical match to the INA's definition of "firearms offense."

We turn next to the agency's contention that, even if its conclusion as to the categorical match issue was incorrect, its ruling is saved by applying the "realistic probability" test.

## II.     The "realistic probability" test

The categorical match inquiry is modified by the so-called "realistic probability" test when the state statute of conviction is of "indeterminate" scope in its application and so leaves open the possibility that it does not in practice match the federal statute; otherwise said, that the federal and state statutes appear from their texts alone to be a categorical match, but their enforcement may diverge in practice. *See Hylton*, 897 F.3d at 63 (internal quotation marks omitted). To demonstrate such a mismatch "requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Duenas-Alvarez*, 549 U.S. at 193.

In *Duenas-Alvarez*, the Supreme Court confronted an apparent categorical match between a California theft statute and the INA's generic federal definition of theft. *Id.* at 189–90. Petitioner Duenas-Alvarez argued that, despite the apparent match, the scope of criminal liability for aiding-and-abetting was broader as applied by California than tolerated by federal law, and therefore the state statute could not be treated as a categorical match to the federal statute and his state conviction could not serve as a ground for his removal. *Id.* at 190–94.

The Supreme Court rejected his argument. It explained that, notwithstanding some suggestions that state law and federal law might lack absolute equivalence in their treatment of such liability, Duenas-Alvarez had failed to demonstrate a "realistic probability" that the state in fact applied its law more broadly than the federal. To make such a demonstration, the Court said, he had "at least [to] point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." *Id.* at 193. "[T]o find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language," it explained. *Id.*

The "realistic probability" test articulated in *Duenas-Alvarez* has no role to play in the categorical analysis, however, when the state statute of conviction on its face reaches beyond the generic federal definition. As we recently explained in *Hylton v. Sessions*, the "realistic probability" test simply does not apply "when the statutory language itself, rather than the application of legal imagination to that language, creates the realistic probability that a state would apply the statute to conduct beyond the generic definition." *Hylton*, 897 F.3d at 63 (internal quotation marks omitted). Here, as we have shown, because the plain language of the Connecticut statute allows prosecution for "carrying" an antique pistol or revolver or for "transporting" a loaded antique pistol or revolver, the mismatch with the federal statute is not created by "legal imagination"

applied in the context of an apparent match, but by the state's statutory language itself. As we wrote in *Hylton*, "When the state law is facially overbroad, we look no further." *Id.* at 65 (internal quotation marks and brackets omitted).[4]

The BIA further wrote, in defense of its alternative holding, that "[t]his is not a case where the text of the statute of conviction plainly criminalizes the carrying of antique pistols and revolvers" and for that reason lies outside the federal statute's reach. CAR at 4 n.1. But as we have explained above, that conclusion was in error, making its alternative holding misguided as well.

## CONCLUSION

Section 29-35(a) of the Connecticut General Statutes is not a categorical match for the generic federal firearms offense, 8 U.S.C. § 1227(a)(2)(C). Accordingly, we **GRANT** the petition for review. We **VACATE** the order of removal, and we **REMAND** the cause to the BIA with directions to terminate Williams's removal proceedings.

---

[4] In support of its position, the BIA cites its own 2014 decision applying the "realistic probability" test as it rejected a challenge to removal that turned on the scope of a Utah firearms crime statute. CAR at 4 (citing *Matter of Chairez-Castrejon*, 26 I. & N. Dec. 349, 355–58 (B.I.A. 2014), *vacated in part on other grounds*, *Matter of Chairez-Castrejon*, 26 I. & N. Dec. 478 (B.I.A. 2015)). That 2014 BIA decision does not bind us, of course, but is inapposite in any event because the Utah statute there made no mention of antique firearms at all, possibly rendering it equivocal on the issue, while the Connecticut statute that we focus on here explicitly addresses some conduct involving antique firearms, as we have discussed. Nevertheless, we express no view on whether the BIA correctly applied the "realistic probability" test in *Chairez-Casterjon*.

Conn. Gen. Stat. § 29-35 (2016)

Carrying of pistol or revolver without permit prohibited. Exceptions

(a) No person shall carry any pistol or revolver upon his or her person, except when such person is within the dwelling house or place of business of such person, without a permit to carry the same issued as provided in section 29-28. The provisions of this subsection shall not apply to the carrying of any pistol or revolver by any parole officer or peace officer of this state, or any Department of Motor Vehicles inspector appointed under section 14-8 and certified pursuant to section 7-294d, or parole officer or peace officer of any other state while engaged in the pursuit of official duties, or federal marshal or federal law enforcement agent, or to any member of the armed forces of the United States, as defined in section 27-103, or of the state, as defined in section 27-2, when on duty or going to or from duty, or to any member of any military organization when on parade or when going to or from any place of assembly, or to the transportation of pistols or revolvers as merchandise, or to any person transporting any pistol or revolver while contained in the package in which it was originally wrapped at the time of sale and while transporting the same from the place of sale to the purchaser's residence or place of business, or to any person removing such person's household goods or effects from one place to another, or to any person transporting any such pistol or revolver from such person's place of residence or business to a place or individual where or by whom such pistol or revolver is to be repaired or while returning to such person's place of residence or business after the same has been repaired, or to any person transporting a pistol or revolver in or through the state for the purpose of taking part in competitions, taking part in formal pistol or revolver training, repairing such pistol or revolver or attending any meeting or exhibition of an

organized collectors' group if such person is a bona fide resident of the United States and is permitted to possess and carry a pistol or revolver in the state or subdivision of the United States in which such person resides, or to any person transporting a pistol or revolver to and from a testing range at the request of the issuing authority, or to any person transporting an antique pistol or revolver, as defined in section 29-33. For the purposes of this subsection, "formal pistol or revolver training" means pistol or revolver training at a locally approved or permitted firing range or training facility, and "transporting a pistol or revolver" means transporting a pistol or revolver that is unloaded and, if such pistol or revolver is being transported in a motor vehicle, is not readily accessible or directly accessible from the passenger compartment of the vehicle or, if such pistol or revolver is being transported in a motor vehicle that does not have a compartment separate from the passenger compartment, such pistol or revolver shall be contained in a locked container other than the glove compartment or console. Nothing in this section shall be construed to prohibit the carrying of a pistol or revolver during formal pistol or revolver training or repair.

(b) The holder of a permit issued pursuant to section 29-28 shall carry such permit upon one's person while carrying such pistol or revolver. Such holder shall present his or her permit upon the request of a law enforcement officer who has reasonable suspicion of a crime for purposes of verification of the validity of the permit or identification of the holder, provided such holder is carrying a pistol or revolver that is observed by such law enforcement officer.

DENNIS JACOBS, *Circuit Judge*, concurring:

The opinion of the Court is sound, and I sign it without reservation. I do have qualms, however.

The Immigration and Nationality Act ("INA") provides for removal of any alien "convicted under any law of . . . carrying . . . any weapon . . . which is a firearm or destructive device (as defined in section 921(a) of Title 18) in violation of any law." 8 U.S.C. § 1227(a)(2)(C). Robert Williams was convicted of carrying a pistol or revolver without a permit, in violation of Connecticut General Statutes § 29-35(a). But he is not going anywhere.

To determine whether Williams's conviction is a removable offense, the Supreme Court requires us to apply the categorical approach. Williams is removable only if a conviction under Connecticut's firearms statute *necessarily* fits within the INA's definition of a removable firearms offense. His actual conduct is irrelevant: we must presume that his conviction rested upon the least of the acts criminalized by Connecticut law. Applying this rule, the Court's opinion compares the Connecticut firearms statute with its federal analog and correctly determines that the match is imperfect. Federal law contains a blanket exemption for antique guns while Connecticut's exemption only extends to unloaded antique guns that are being transported.

To be clear, Williams was not a collector of antiques. The gun he possessed was your ordinary workaday firearm. The result reached by the Court's opinion is an impediment to the suppression of illegal guns in Connecticut. And it prolongs for now the presence of a man who roamed the streets drunk while waving a gun and firing it.

That cannot have been the intention of either the Connecticut General Assembly or the United States Congress. But the rule requiring a categorical match between the

unambiguous terms of the two statutes has the effect of frustrating both of them. The result in the Court's opinion is compelled, not endorsed. I would not try to justify it to any sensible person.